**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Renfrow v. Norfolk S. Ry. Co.*, **Slip Opinion No. 2014-Ohio-3666.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-3666

RENFROW, APPELLEE, *v.* NORFOLK SOUTHERN RAILWAY COMPANY, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Renfrow v. Norfolk S. Ry. Co.*, Slip Opinion No. 2014-Ohio-3666.]**

*R.C. 2307.91(Z), 2307.92(C), and 2307.93—Prima facie evidence of physical impairment for tort action involving asbestos exposure.*

(No. 2013-0761—Submitted April 29, 2014—Decided September 3, 2014.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 98715, 2013-Ohio-1189.

_____

SYLLABUS OF THE COURT

1. One of the statutory prerequisites necessary to establish a prima facie tort action alleging an asbestos claim based upon lung cancer requires a person who is a smoker to demonstrate a diagnosis by a competent medical authority that the exposure to asbestos is a substantial contributing factor. (*See* R.C. 2307.92(C)(1)(a).)

2. Competent medical authority, as defined in R.C. 2307.91(Z), requires that a medical doctor must (1) be a board certified internist, pulmonary specialist, oncologist, pathologist, or occupational medicine specialist, (2) actually be treating or have treated and have or had a doctor-patient relationship with the exposed person, (3) not have relied on expert or other reports of third parties, and (4) spend not more than 25 percent of his professional practice in consulting or providing expert services.

_____

**O'DONNELL, J.**

{¶ 1}  Norfolk Southern Railway Company ("Norfolk Southern") appeals from a judgment of the Eighth District Court of Appeals affirming the denial of its motion to administratively dismiss the complaint of Cleo J. Renfrow, who asserts claims alleging that her husband's asbestos exposure at Norfolk Southern caused him to develop lung cancer.  The court of appeals determined that Renfrow had provided sufficient evidence to prevent an administrative dismissal of the action.

{¶ 2}  In this case, however, the physician retained by Renfrow who opined about the cause of her husband's lung cancer is not a "competent medical authority" as defined in R.C. 2307.91(Z), and therefore Renfrow failed to make a prima facie showing as required by Ohio law to prevent the administrative dismissal of the action.  Accordingly, the judgment of the court of appeals is reversed.

### *Facts and Procedural History*

{¶ 3}  Gerald B. Renfrow worked for Norfolk Southern as a brakeman from 1968 until 1992.  He smoked a pack and a half of cigarettes every day for 50 years.  He developed lung cancer and received treatment through the Veterans Affairs ("VA") health-care system.  He died on January 22, 2011, and the death certificate listed lung cancer with brain metasteses as the cause of death.

2

**{¶ 4}** Renfrow's widow, Cleo J. Renfrow, as representative of her husband's estate, sued Norfolk Southern, asserting asbestos-related claims arising from his employment at Norfolk Southern, including claims pursuant to the Federal Employers' Liability Act ("FELA"), 45 U.S.C. 51 et seq., and other federal statutes. Norfolk Southern moved to administratively dismiss the suit, claiming that it did not comply with Ohio's statutory requirements for filing a tort action asserting asbestos claims because Renfrow failed to proffer the necessary prima facie evidence in support of the claims.

**{¶ 5}** Renfrow filed a response opposing the motion and appended as exhibits copies of medical records, radiology reports, her husband's death certificate, an affidavit by Darl Rockenbaugh—a former coworker of Gerald Renfrow—in which Rockenbaugh averred that he and Renfrow "worked with and around * * * asbestos products and regularly breathed that dust in throughout the 1960's and 1970's," and a report prepared by Laxminarayana C. Rao, M.D., who had not treated Gerald Renfrow but who is board certified in internal and pulmonary medicine.

**{¶ 6}** At a hearing held on the motion, Renfrow's counsel asserted that in accordance with Eighth District precedent, a trial court "can read the medical records in conjunction with the expert reports that have been submitted" to determine whether the claimant satisfied Ohio law regulating asbestos litigation. He admitted, however, that he had not obtained a written report from Gerald Renfrow's treating physician that stated his exposure to asbestos constituted a substantial contributing factor to his lung cancer. Renfrow's counsel explained that Michele Wagner, an attorney in the Office of Regional Counsel for the Department of Veterans Affairs in Indianapolis, Indiana, advised him that the VA would not authorize its physician—Thomas Lynch, M.D.—to comply with his request for a written report.

{¶ 7} After the hearing, Renfrow's counsel forwarded copies of correspondence from the VA's Office of Regional Counsel to the trial court. In a letter dated May 18, 2012, Wagner stated that 38 C.F.R. 14.808 "prohibits VA personnel from providing opinion or expert testimony concerning official VA subjects and allows an exception only in exceptional circumstance[s]." Wagner concluded that neither the information contained in a letter from Renfrow's attorney nor the information he provided in a subsequent conversation "warrants a finding of exceptional circumstances that would waive the prohibition on expert or opinion testimony." She advised him that if he disagreed with her decision, he could appeal the matter to the Department of Veterans Affairs' general counsel in Washington, D.C. Renfrow's counsel asserts that when he contacted the general counsel's office in Washington, D.C., a representative informed him that the regional counsel had authority to make a final determination in the matter.

{¶ 8} The trial court denied Norfolk Southern's motion for administrative dismissal. It determined that Gerald Renfrow was a "nontraditional plaintiff" because he had been treated by several physicians and nurse practitioners through the VA health-care system. Relying on Eighth District precedent, the trial court ruled that the evidence submitted by Renfrow "consisting of Mr. Renfrow's hospital records, history of smoking, asbestos exposure and a report from a competent medical authority is sufficient to establish a prima facie case as required by R.C. 2307.92 and 2307.93."

{¶ 9} Norfolk Southern appealed. The court of appeals affirmed, and stated (1) its own precedent established that "R.C. 2307.92 was not intended to penalize a nontraditional patient like the decedent who was properly diagnosed by competent medical personnel and had medical records and other evidence to support his claim," *Renfrow*, 8th Dist. Cuyahoga No. 98715, 2013-Ohio-1189, at ¶ 25, (2) Dr. Rao's report "provided the crucial causal link between Mr. Renfrow's occupational exposure to asbestos dust, diesel fumes and exhaust and

him developing lung cancer, [so] the trial court was on firm ground in concluding that Mrs. Renfrow had established a prima facie case as required by R.C. 2307.92 and 2307.93," *id.* at ¶ 28, and (3) the evidence, "when viewed collectively, is sufficient to survive an administrative dismissal," *id.* at ¶ 37.

{¶ 10} Norfolk Southern appealed, and we granted discretionary review. Norfolk Southern argues that the appellate court impermissibly ignored the statutory requirements in asbestos cases that a "competent medical authority" (as defined by statute) opine that but for the claimant's exposure to asbestos, the claimant would not have contracted lung cancer. It maintains that Dr. Rao is not a competent medical authority and that, even if he were, his report does not satisfy this standard.

{¶ 11} Renfrow contends that the appellate decision in this case and in other Eighth District decisions protect the substantive rights of cancer victims who are treated in VA hospitals and thus do not have a traditional doctor-patient relationship as contemplated in R.C. 2307.91(Z)(2). Moreover, according to her, the requirement in Ohio law that a person who is a smoker needs to show that but for the asbestos exposure, he would not have developed lung cancer in order to prevent administrative dismissal conflicts with the negligence standard in FELA claims. Renfrow also maintains that the law of causation is the same now as it was before recent revisions to Ohio law governing asbestos litigation, that Dr. Rao offered his opinions to a reasonable degree of medical certainty in conformity with Ohio common law, and that if the appellate court's decision is not upheld, then Ohio's regulation of asbestos litigation unconstitutionally impairs Renfrow's substantive federal rights.

{¶ 12} In addition, Renfrow raises for the first time a contention that Ohio's requirements for filing a tort action alleging an asbestos claim impair her ability to seek a meaningful, timely remedy in violation of Article I, Section 16 of the Ohio Constitution. She also contends that Ohio law governing asbestos

litigation impairs her right to a jury trial pursuant to Article I, Section 5 of the Ohio Constitution.

{¶ 13} Accordingly, the issues presented in this appeal are whether Ohio law regulating asbestos litigation unconstitutionally impairs a litigant's ability to enforce a federal cause of action in a tort action alleging asbestos claims, whether Renfrow presented evidence sufficient to withstand administrative dismissal of her action, and whether Ohio law governing asbestos litigation deprives Renfrow of substantive rights granted by the Ohio Constitution.

### *Law and Analysis*

{¶ 14} In 2004, the General Assembly enacted R.C. 2307.91 through 2307.98, revising Ohio law regulating asbestos litigation. Am.Sub.H.B. No. 292, 150 Ohio Laws, Part III, 3970; *Ackison v. Anchor Packing Co.*, 120 Ohio St.3d 228, 2008-Ohio-5243, 897 N.E.2d 1118, ¶ 3; *Norfolk S. Ry. Co. v. Bogle*, 115 Ohio St.3d 455, 2007-Ohio-5248, 875 N.E.2d 919, ¶ 2. In *Bogle*, we explained that

> the General Assembly enacted R.C. 2307.91 through 2307.98 to serve four primary purposes: (1) to give priority to those claimants who can demonstrate actual physical harm caused by asbestos, (2) to preserve the rights of those who were exposed for future action, (3) to enhance the state's system of supervision and control over asbestos-related litigation, and (4) to conserve the scarce resources of the defendants so as to allow compensation for cancer victims while also securing a right to similar compensation for those who suffer harm in the future.

*Id.* at ¶ 3, citing Am.Sub.H.B. No. 292, Section 3(B), 150 Ohio Laws, Part III, 3991.

**{¶ 15}** *Bogle* states that

> the impact of these statutes is to establish a procedural prioritization of the asbestos-related cases on the court's docket. Nothing more. Simply put, these statutes create a procedure to prioritize the administration and resolution of a cause of action that already exists. No new substantive burdens are placed on claimants * * *.

*Bogle* at ¶ 16. We have held that the requirements in R.C. 2307.91, 2307.92, and 2307.93 do not violate Article II, Section 28 of the Ohio Constitution, the Retroactivity Clause, *Ackison* at syllabus, and that the application of the filing requirements of R.C. 2307.92 to claims brought pursuant to the FELA and the federal Locomotive Boiler Inspection Act does not violate the Supremacy Clause of the United States Constitution, *Bogle* at syllabus.

**{¶ 16}** R.C. 2307.93(A) governs the filing of prima facie evidence in tort actions alleging asbestos claims, as well as challenges to that evidence by a defendant. Pursuant to R.C. 2307.93(A)(1), a plaintiff in a tort action who alleges an asbestos claim is required to file, within 30 days after filing the complaint or other initial pleading, a written report and supporting test results constituting prima facie evidence of the exposed person's physical impairment that meets the minimum requirements contained in R.C. 2307.92(B), (C), or (D), whichever is applicable. R.C. 2307.93(A)(1) provides that a defendant shall be afforded a reasonable opportunity, upon motion, to challenge the adequacy of the proffered prima facie evidence of the physical impairment for failure to comply with the minimum requirements specified in R.C. 2307.92(B), (C), or (D). According to R.C. 2307.93(A)(1), the defendant has 120 days from the date the specified type of prima facie evidence is proffered to challenge the adequacy of that evidence.

{¶ 17} Upon a challenge to the adequacy of the prima facie evidence of the exposed person's physical impairment, R.C. 2307.93(B) directs a court to resolve the issue whether a plaintiff has made a prima facie showing required by R.C. 2307.92(B), (C), or (D) by applying the standard for resolving a motion for summary judgment. Pursuant to R.C. 2307.93(C), a court "shall administratively dismiss" the plaintiff's claim without prejudice upon a finding of failure to make the prima facie showing required by R.C. 2307.92(B), (C), or (D). However, R.C. 2307.93(C) requires a court to maintain its jurisdiction over any case that is administratively dismissed and permits the plaintiff to reinstate the case if the plaintiff makes a prima facie showing that meets the minimum requirements specified in R.C. 2307.92(B), (C) or (D).

{¶ 18} Because it is undisputed that Gerald Renfrow was a smoker and the evidence shows that his death resulted from lung cancer with brain metasteses, R.C. 2307.92(C) applies in this case. It provides:

> (C)(1) No person shall bring or maintain a tort action alleging an asbestos claim based upon lung cancer of an exposed person who is a smoker, in the absence of a prima-facie showing, in the manner described in division (A) of section 2307.93 of the Revised Code, that the exposed person has a physical impairment, that the physical impairment is a result of a medical condition, and that the person's exposure to asbestos is a substantial contributing factor to the medical condition. That prima-facie showing shall include all of the following minimum requirements:
>
> (a) A diagnosis by a competent medical authority that the exposed person has primary lung cancer and that exposure to asbestos is a substantial contributing factor to that cancer.

**{¶ 19}** R.C. 2307.91(FF) defines the term **"**substantial contributing factor":

"Substantial contributing factor" means both of the following:

(1) Exposure to asbestos is the predominate cause of the physical impairment alleged in the asbestos claim.

(2) A competent medical authority has determined with a reasonable degree of medical certainty that without the asbestos exposures the physical impairment of the exposed person would not have occurred.

**{¶ 20}** In *Ackison*, 120 Ohio St.3d 228, 2008-Ohio-5243, 897 N.E.2d 1118, ¶ 48, we stated that R.C. 2309.91(FF)(2) "is, in essence, a 'but for' test of causation, which is the standard test for establishing cause in fact. * * * Cause in fact is distinct from proximate, or legal cause. Once cause in fact is established, a plaintiff then must establish proximate cause in order to hold a defendant liable." *Ackison*, ¶ 49, states: "When R.C. 2307.91(FF)(1) and (2) are read in pari materia, it appears that the two subsections were intended to require that asbestos exposure be a significant, direct cause of the injury to the degree that without the exposure to asbestos, the injury would not have occurred." We determined in *Ackison* that the "definition of 'substantial contributing factor' does not alter the proof necessary to establish particular causation by a particular defendant when the trier of fact reviews the merits of a claim." *Id.* at ¶ 52.

**{¶ 21}** The term "competent medical authority" is defined in R.C. 2307.91(Z), which states:

"Competent medical authority" means a medical doctor who is providing a diagnosis for purposes of constituting prima-facie evidence of an exposed person's physical impairment that meets the requirements specified in section 2307.92 of the Revised Code and who meets the following requirements:

(1) The medical doctor is a board-certified internist, pulmonary specialist, oncologist, pathologist, or occupational medicine specialist.

(2) The medical doctor is actually treating or has treated the exposed person and has or had a doctor-patient relationship with the person.

(3) As the basis for the diagnosis, the medical doctor has not relied, in whole or in part, on any of the following:

(a) The reports or opinions of any doctor, clinic, laboratory, or testing company that performed an examination, test, or screening of the claimant's medical condition in violation of any law, regulation, licensing requirement, or medical code of practice of the state in which that examination, test, or screening was conducted;

(b) The reports or opinions of any doctor, clinic, laboratory, or testing company that performed an examination, test, or screening of the claimant's medical condition that was conducted without clearly establishing a doctor-patient relationship with the claimant or medical personnel involved in the examination, test, or screening process;

(c) The reports or opinions of any doctor, clinic, laboratory, or testing company that performed an examination, test, or screening of the claimant's medical condition that required the

claimant to agree to retain the legal services of the law firm sponsoring the examination, test, or screening.

(4) The medical doctor spends not more than twenty-five per cent of the medical doctor's professional practice time in providing consulting or expert services in connection with actual or potential tort actions, and the medical doctor's medical group, professional corporation, clinic, or other affiliated group earns not more than twenty per cent of its revenues from providing those services.

{¶ 22} Dr. Rao does not satisfy the definition of "competent medical authority" contained in R.C. 2307.91(Z). Renfrow's counsel conceded during oral argument that the record is devoid of evidence establishing that Dr. Rao satisfies R.C. 2307.91(Z)(4), and he admitted that he never asked Dr. Rao whether he satisfied the requirements contained in that statute. Dr. Rao also does not satisfy R.C. 2307.91(Z)(2), because he is not a medical doctor who actually treated Gerald Renfrow or who had a doctor-patient relationship with him.

{¶ 23} Additionally, even if Dr. Rao were able to satisfy the requirements of R.C. 2307.91(Z), his report does not establish that Gerald Renfrow's exposure to asbestos was the predominate cause of his lung cancer and that to a reasonable degree of medical certainty, without the asbestos exposures his lung cancer would not have occurred. *See* R.C. 2307.91(FF). In his report, Dr. Rao concluded:

After reviewing all the information provided, I have come to the conclusion within a reasonable degree of medical certainty that Mr. Renfrow had inoperable lung cancer with brain metastasis. * * * [I]t is my opinion within a reasonable degree of medical certainty that occupational exposure to asbestos dust, diesel fumes

and exhaust *in part* contributed to the development of his lung cancer and eventual death. Asbestos exposure acted synergistically with the cigarette smoking, diesel fumes and exhaust to greatly increase the risk of lung cancer beyond that expected from either exposure alone.

(Emphasis added.) Dr. Rao's report does not establish that Gerald Renfrow's asbestos exposure was the predominate cause of his lung cancer and that without the asbestos exposure, Gerald's lung cancer would not have occurred. *See Ackison*, 120 Ohio St.3d 228, 2008-Ohio-5243, 897 N.E.2d 1118, at ¶ 49.

{¶ 24} Nonetheless, Renfrow urges that the requirement of R.C. 2307.91(Z)(2) that a medical doctor who "is actually treating or has treated the exposed person and has or had a doctor-patient relationship with the person" deprives her of substantive rights pursuant to the FELA and the Ohio Constitution because the statute requires her to produce an expert opinion from a VA physician and VA physicians are prohibited by 38 C.F.R. 14.808 from giving that opinion. She also asserts that pursuant to *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951), a federal official need not comply with a subpoena from a state court.

{¶ 25} In that regard, 38 C.F.R. 14.808(a) limits the ability of VA personnel to provide an opinion or expert testimony:

VA personnel shall not provide, with or without compensation, opinion or expert testimony in any legal proceedings concerning official VA information, subjects or activities, except on behalf of the United States or a party represented by the United States Department of Justice. Upon a showing by the requester or court or other appropriate authority

that, in light of the factors listed in § 14.804, there are exceptional circumstances and that the anticipated testimony will not be adverse to the interests of the Department of Veterans Affairs or to the United States, the responsible VA official designated in § 14.807(b) may, in writing, grant special authorization for VA personnel to appear and testify. If, despite the final determination of the responsible VA official, a court of competent jurisdiction or other appropriate authority, orders the expert or opinion testimony of VA personnel, the personnel shall notify the responsible VA official of such order. If the responsible VA official determines that no further legal review of or challenge to the order will be sought, the affected VA personnel shall comply with the order. If directed by the appropriate VA official after consultation with the appropriate United States Attorney's office, however, the affected VA personnel shall respectfully decline to comply with the demand, request or order.

{¶ 26} That section, however, does not prohibit a litigant from issuing a subpoena to a VA official. During oral argument, Renfrow's counsel admitted that he had not subpoenaed Dr. Lynch after receiving the adverse agency ruling. *See Houston Business Journal, Inc. v. Office of Comptroller of Currency, United States Dept. of Treasury*, 86 F.3d 1208, 1212 (D.C.Cir.1996) (remedy for state-court litigant to challenge adverse agency ruling pertaining to a request for documents is a collateral action in federal court). That failure precluded compliance with the statutory requirement to obtain a diagnosis by a competent medical authority to support her claim that her husband's asbestos exposure at Norfolk Southern was a substantial contributing factor to his lung cancer.

**{¶ 27}** Renfrow calls our attention to *Touhy*, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417, and asserts that she had not subpoenaed Dr. Lynch, because according to that case, a federal official need not comply with a state-issued subpoena.

**{¶ 28}** We acknowledge that the Fourth Circuit Court of Appeals has described *Touhy* as "part of an unbroken line of authority which directly supports [the] contention that a federal employee may not be compelled to obey a subpoena contrary to his federal employer's instructions under valid agency regulations," *Boron Oil Co. v. Downie*, 873 F.2d 67, 69 (4th Cir.1989), and that the Ninth Circuit Court of Appeals has stated that "the *Touhy* doctrine is jurisdictional and precludes a contempt action," *Swett v. Schenk*, 792 F.2d 1447, 1452 (9th Cir.1986).

**{¶ 29}** A careful reading of *Touhy*, however, discloses that its holding is a narrow one. In that case, Roger Touhy, a state-prison inmate, instituted a habeas corpus action in a federal district court against his warden, seeking to prove that his conviction was secured by fraud. He subpoenaed the agent in charge of the Federal Bureau of Investigation in Chicago to produce certain records. Pursuant to an order issued by the United States attorney general, the agent refused to produce the subpoenaed records, and the court held the agent in contempt. On appeal, the Seventh Circuit Court of Appeals reversed, ruling that the order issued by the attorney general was authorized by a federal statute. Touhy appealed, and the United States Supreme Court granted certiorari.

**{¶ 30}** The United States Supreme Court affirmed the judgment of the appellate court, concluding that the attorney general's order was valid and the agent had properly refused to produce the requested documents. *Id.* at 467. Notably, *Touhy* determined that it was "concerned only with the validity" of the attorney general's order and that the case was "ruled by *Boske v. Comingore*, 177 U.S. 459, 20 S.Ct. 701, 44 L.E. 846 [1900]." *Id.* at 469. (*Boske* affirmed the

discharge from sheriff's custody of an internal revenue collector being held in contempt for refusing to disclose copies of certain reports based on a treasury regulation). Thus, *Touhy* stands for the proposition that a court may not hold a federal employee in contempt for refusing to comply with a subpoena when he acts in accordance with a validly enacted agency regulation—not that a federal official need not comply with a state-issued subpoena. Indeed, in a concurring opinion in *Touhy*, Justice Frankfurter stated, "[T]he decision and opinion in this case cannot afford a basis for a future suggestion that the Attorney General can forbid every subordinate who is capable of being served by process from producing relevant documents and later contest a requirement upon him to produce on the ground that procedurally he cannot be reached." *Touhy*, 340 U.S. at 472, 71 S.Ct. 416, 95 L.Ed. 417 (1951) (Frankfurter, J., concurring).

{¶ 31} Accordingly, Renfrow abandoned her efforts to secure an opinion from a medical doctor whom she had identified as a competent medical authority. Based on these facts, the requirement of R.C. 2307.91(Z)(2) that a competent medical authority be a medical doctor who "is actually treating or has treated the exposed person and has or had a doctor-patient relationship with the person" has not denied Renfrow a right to a remedy in this case.

### *Conclusion*

{¶ 32} One of the statutory prerequisites necessary to establish a prima facie tort action alleging an asbestos claim based upon lung cancer requires a person who is a smoker to demonstrate a diagnosis by a competent medical authority that the exposure to asbestos is a substantial contributing factor. Competent medical authority, as defined in R.C. 2307.91(Z), requires that a medical doctor must (1) be a board certified internist, pulmonary specialist, oncologist, pathologist, or occupational medicine specialist, (2) actually be treating or have treated and have or had a doctor-patient relationship with the exposed person, (3) not have relied on expert or other reports of third parties, and

(4) spend not more than 25 percent of his professional practice in consulting or providing expert services.

{¶ 33} Renfrow failed to make the prima facie showing required to withstand administrative dismissal of this tort action alleging an asbestos claim based on lung cancer. She has not been deprived of a right to a remedy because dismissal of this action is based on a failure of proof and she has the opportunity to move to reinstate the case upon presentation of proper prima facie evidence in the future. The judgment of the court of appeals is therefore reversed.

Judgment reversed.

O'CONNOR, C.J., and PFEIFER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

LANZINGER, J., concurs in judgment only.

_____

**PFEIFER, J., concurring.**

{¶ 34} R.C. 2307.92 may be a well-intentioned statute, but in this case, it is working a tremendous hardship on Cleo Renfrow by requiring testimony from a treating physician, which Veterans Affairs ("VA") patients find exceedingly difficult to produce. Still, one does wonder whether the outcome would have been different had counsel subpoenaed Dr. Lynch or any of the other VA doctors who treated Gerald Renfrow. At a minimum, that action would have prevented this court from concluding that Cleo Renfrow had abandoned her efforts to comply with R.C. 2307.92.

_____

**O'NEILL, J., concurring**.

{¶ 35} I concur in the majority opinion in this case. I write separately to emphasize that this is not the end of Cleo Renfrow's case. I agree that Dr. Rao does not satisfy the statutory definition of "competent medical authority" by virtue of the fact that he is not a medical doctor who actually treated Gerald

Renfrow. I further agree that Dr. Rao's report does not establish that Mr. Renfrow's exposure to asbestos was the "predominate cause" of his lung cancer as required by the statute, and that without exposure to asbestos, his lung cancer would not have occurred. *Ackison v. Anchor Packing Co.,* 120 Ohio St.3d 228, 2008-Ohio-5243, 897 N.E.2d 1118, at ¶ 49.

{¶ 36} As the majority opinion observes, Mrs. Renfrow's counsel has not done all that is possible to secure an opinion from the Veterans Affairs ("VA") doctor who treated Mr. Renfrow. Majority opinion at ¶ 31. At oral argument, Mrs. Renfrow's counsel admitted that he had not issued a subpoena to the VA doctor.

{¶ 37} Today we do not reach the question whether the medical-witness requirements of R.C. 2307.91(Z)(2) deprive Mrs. Renfrow of substantive rights pursuant to the Federal Employers' Liability Act and the Ohio Constitution. It is clear that the statute requires her to produce an expert opinion, and it is equally clear that the VA physicians who treated her husband, in all but exceptional circumstances, are prohibited by 38 C.F.R. 14.808 from giving expert testimony. It appears in this case that without special authorization by the appropriate VA official there will be no evidence presented by the VA doctors. This question, however, is not before us today as explained earlier and will be ripe for review only when all possible means of securing an opinion from the VA doctors have been exhausted.

{¶ 38} Fortunately, R.C. 2307.93(C) specifies that a court is permitted to maintain its jurisdiction over any case that it administratively dismisses under R.C. 2307.93. Any plaintiff whose case has been administratively dismissed, as was Mrs. Renfrow's, may move to reinstate his or her case if he or she ultimately makes a prima-facie showing that meets the minimum requirements specified in R.C. 2307.92(B), (C), or (D). R.C. 2307.93(A)(3)(c). In short, we have the cart before the horse here. Asbestos claims are statute driven. In this matter, *if* Mrs.

Renfrow does all that she can to secure an expert opinion from her husband's treating physician and is still unable to attain that opinion, *then* there will be something to review.

_____

Doran & Murphy, P.L.L.C., and Michael L. Torcello, Christopher M. Murphy, and Colleen M. Blinkoff; and Mary Brigid Sweeney Co., L.L.C., and Mary Brigid Sweeney, for appellee.

Burns White, L.L.C., and David A. Damico, and Ira L. Podheiser, for appellant.

Vorys, Sater, Seymour & Pease, L.L.P., and Richard D. Schuster, Daniel E. Shuey, and Damien C. Kitte, urging reversal for amici curiae, the Ohio Chamber of Commerce, the Ohio Council of Retail Merchants, and the Chamber of Commerce of the United States of America.

_____