[Cite as *State v. Gordon*, 2014-Ohio-5027.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  |  | JUDGES: |
| STATE OF OHIO | : | Hon. W. Scott Gwin,, P.J. |
|  | : | Hon. Sheila G. Farmer,, J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 14-CA-13 |
| CARL L. GORDON, JR. | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Criminal appeal from the Fairfield County Court of Common Pleas, Case No. 2013CR330

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      November 10, 2014

APPEARANCES:

For Plaintiff-Appellee

GREG MARX
Fairfield  County Prosecutor
JAMES DAVEY
Assistant County Prosecutor
239 West Main Street, Ste. 101
Lancaster, OH 43130

JOSEPH SAKS
Special Prosecuting Attorney
117 East High Street, Ste. 234
Mount Vernon, OH 43050

For Defendant-Appellant

WILLIAM CRAMER
470 Olde Worthington Road, Suite 200
Westerville, OH 43082

*Gwin, P.J.*

{¶1} Defendant-appellant Carl L. Gordon, Jr. ["Gordon"] appeals the October 2, 2013 Judgment of the Fairfield County Court of Common Pleas overruling his motion to suppress evidence. Plaintiff-appellee is the State of Ohio.

*Facts and Procedural History*

{¶2} On June 13, 2013, Ohio State Highway Patrol Trooper Benjamin Seabolt was on patrol on U.S. 33 in Fairfield County when he observed a white 2013 Hyundai Sonata pass in front of his patrol car. Trooper Seabolt was only able to see the very top of the driver's head and was unable to discern the driver's gender or race. It appeared to Trooper Seabolt that the driver was attempting to conceal herself by leaning back in her seat behind the vehicle's "B-pillar," which is the pillar that runs down the side of the driver, adjacent to the driver's left-hand shoulder. Trooper Seabolt did not observe anyone else within the vehicle at that time. Trooper Seabolt followed the vehicle, paced it at 66 miles per hour in a 60 miles-per-hour zone, and conducted a traffic stop. The stop was recorded on the cruiser's digital recording system.

{¶3} As Trooper Seabolt approached the vehicle, he observed for the first time that Gordon was in the passenger seat of the vehicle. Gordon was lying in the front passenger seat, which was completely flat, almost touching the rear seat of the vehicle. Gordon appeared to be neither sleeping nor waking up, and neither the driver nor Gordon ever told Trooper Seabolt that Gordon had been asleep. Trooper Seabolt identified such behavior as "a major indicator of criminal activity" and as indicative of a male who carries drugs on his person. The driver is Gordon's wife.

{¶4} Trooper Seabolt informed the driver and Gordon of the purpose for the stop and obtained their identification. As Trooper Seabolt asked for their identification, he observed loose marijuana flakes on the driver's pant leg. Trooper Seabolt was able to identify the flakes as marijuana based on his training and experience. The driver stated that the flakes were chocolate and brushed the marijuana flakes off her pants. Trooper Seabolt then requested that driver exit the vehicle. The driver was placed into the cruiser while Gordon remained inside the vehicle. Trooper Seabolt called for backup; however, before back up arrived, Trooper Seabolt requested a canine unit. Dispatch responded that the canine unit would arrive at the scene in approximately ten minutes.

{¶5} When asked about their destination, the driver stated that the pair had been house hunting. Gordon, however, stated the pair was going to his cousin's house in Coolville or Belpre, Ohio. The inconsistent explanations of where they were going, especially considering their claim that they were married, further aroused Trooper Seabolt's suspicions. Both the driver and Gordon had bloodshot, glassy eyes. The driver refused to allow Trooper Seabolt to search the vehicle.

{¶6} A second trooper arrived before the canine unit. It took thirty minutes for the canine unit to arrive because no canine unit was available from the Fairfield County Sheriff's Office, the Lancaster Police Department, or the State Patrol's Lancaster Post. Instead, a canine unit was called up from Hocking County. Trooper Seabolt testified that his typical traffic stop lasts twelve to fifteen minutes. The canine alerted to the rear seam of the vehicle's right front passenger door, directly where Gordon was sitting. Gordon denied that there were drugs inside the vehicle. Trooper Seabolt removed Gordon from the vehicle and patted him down for weapons. During the pat down, Trooper Seabolt

found a bulge the size of a golf ball pinched between Gordon's buttocks. Gordon denied that he was concealing anything in his buttocks.

{¶7} Trooper Seabolt secured Gordon in the rear of his patrol car and conducted a search of the vehicle. Trooper Seabolt found the following articles inside the vehicle: in the driver's purse, which was on the rear seat, three grams of marijuana and rolling papers; in the trunk, **a** red duffle bag that contained a digital scale and a bag of cut-up blue plastic, which is commonly used to package black tar heroin; and in the glove compartment, directly in front of where Gordon had been sitting, a fully loaded handgun with a bullet in the chamber.

{¶8} A subsequent search at the jail revealed the bulge in Gordon's buttocks to be an ounce of powder cocaine. The driver was also searched at the jail, and a package of crack cocaine and black tar heroin was found in her crotch.

{¶9} Gordon was charged with: (1) having a weapon while under disability in violation of R.C. 2923.13, a third-degree felony; (2) carrying a concealed weapon (a handgun) in violation of R.C. 2923.12, a fourth-degree felony; (3) improper handling of a firearm in a motor vehicle in violation of R.C. 2923.16, a fourth-degree felony; (4) illegal conveyance (drugs) into a jail in violation of R.C. 2921.36, a third-degree felony; (5) trafficking cocaine (in excess of 27 grams) in violation of R.C. 2925.03, a first-degree felony; and (6) possession of cocaine (in excess of 27 grams) in violation of R.C. 2925.11, a first-degree felony.

{¶10} Gordon moved to suppress the items found during the search of the vehicle. An evidentiary hearing was held where the trooper testified and the cruiser

video was provided to the trial court. Following the hearing, the court denied the motion to suppress.

{¶11} Shortly after the denial of the motion, Gordon agreed to plead no contest to counts one (weapon under disability), three (improper handling), four (illegal conveyance), and an amended count five (trafficking cocaine). In exchange, the prosecution dismissed counts two (concealed weapon) and six (cocaine possession), and amended count five (trafficking cocaine) to reduce the amount of drugs and limit the offense to a second-degree felony. The parties also agreed to a sentencing recommendation of 36 months suspended on count one, 18 months suspended on count three, 18 months on count four, and a mandatory two years on count five all to be served consecutively. The court accepted the no contest pleas. The defense stipulated that there was a factual basis to support findings of guilt and the court found Gordon guilty on all counts. At sentencing, the court adopted the agreed sentencing recommendation and suspended the prison terms on counts one and three in favor of five years of community control. This resulted in an aggregate prison term of three-and-a-half years, with two years mandatory, to be followed by five years of community control. The court also imposed a three-year driver's license suspension and imposed the sentence in this case consecutively to any sentence that Gordon received for a community control violation on a separate case. The prosecution stipulated that Gordon was indigent for purposes of waiving fines, so no fines were imposed.

*Assignment of Error*

{¶12} Gordon raises one assignment of error,

{¶13} "I. THE TRIAL COURT VIOLATED APPELLANT'S RIGHTS TO BE FREE OF UNREASONABLE SEARCHES AND SEIZURES UNDER THE STATE AND FEDERAL CONSTITUTIONS BY REFUSING TO SUPPRESS EVIDENCE OBTAINED AFTER AN OFFICER DELAYED A TRAFFIC STOP TO AWAIT THE ARRIVAL OF A CANINE UNIT."

*Analysis*

{¶14}  Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside,* supra; *Dunlap,* supra; *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist. 1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist.1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. See *Burnside,* supra, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist 1997); See, generally, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review *Ornelas*, supra. Moreover, due weight should be given "to inferences

drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, supra at 698, 116 S.Ct. at 1663.

**{¶15}** The question raised in Gordon's sole assignment of error is whether the lawful detention for the traffic infraction became an unlawful detention when the officer decided to call for the use of a narcotics-detection dog to sniff around exterior of the vehicle in which Gordon was a passenger.

**The Stop**

**{¶16}** In *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89(1996), the United States Supreme Court held:

> The temporary detention of a motorist upon probable cause to believe that he has violated the traffic laws does not violate the Fourth Amendment's prohibition against unreasonable seizures, even if a reasonable officer would not have stopped the motorist absent some additional law enforcement objective.

*Whren* at 1771. Less than one month later, the Ohio Supreme Court reached a similar decision in *City of Dayton v. Erickson*, 76 Ohio St.3d 3,1996-Ohio-431,665 N.E.2d 1091. In *Erickson*, the Court stated:

> Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity.

Id. at syllabus. However, the Ohio Supreme Court has emphasized that probable cause is not required to make a traffic stop; rather the standard is reasonable and articulable suspicion. *State v. Mays*, 119 Ohio St.3d 406, 894 N.E.2d 1204, 2008-Ohio-4538 at ¶ 23.

{¶17} Based on the above, neither the United States Supreme Court nor the Ohio Supreme Court considered the severity of the offense as a factor in determining whether the law enforcement official had a reasonable, articulable suspicion to stop a motorist. In fact, the Ohio Supreme Court stated that " * * * we conclude that where an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation*, the stop is constitutionally valid *regardless of the officer's underlying subjective intent or motivation for stopping the vehicle in question.*" (Emphasis added.) *City of Dayton v. Erickson*, supra at 11-12, 665 N.E.2d 1091. See, also, *State v. Rice*, Fifth Dist. Stark No. 2005CA00242, 2006-Ohio-3703, ¶33-34; *State v. Ivers*, 5th Dist. Licking No. 99CA48, 2000 WL 1480(Dec. 23, 1999). If an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid. *State v. Mays*, supra at ¶ 8.

{¶18} In *Mays*, supra the defendant argued that his actions in the case – twice driving across the white edge line – were not enough to constitute a violation of the driving within marked lanes statute, R.C. 4511.33. Id. at ¶15. The appellant further argued that the stop was unjustified because there was no reason to suspect that he had failed to first ascertain that leaving the lane could be done safely or that he had not stayed within his lane "as nearly as [was] practicable," within the meaning of R.C.

4511.33(A)(1). In rejecting these arguments, the Supreme Court noted, "the question of whether appellant might have a possible defense to a charge of violating R.C. 4511.33 is irrelevant in our analysis of whether an officer has a reasonable and articulable suspicion to initiate a traffic stop. An officer is not required to determine whether someone who has been observed committing a crime might have a legal defense to the charge." Id. at ¶17.

{¶19}  In the case at bar, Trooper Seabolt's stop of the vehicle was based upon a reasonable and articulable suspicion that the driver had committed a traffic violation, i.e. speeding. The judge is in the best position to determine the credibility of witnesses, and his conclusion in this case is supported by competent facts. See *State v. Burnside* (2003), 100 Ohio St.3d 152, 154-55, 797 N.E.2d 71, 74. The fundamental rule that weight of evidence and credibility of witnesses are primarily for the trier of fact applies to suppression hearings as well as trials. *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583, 584. The Trooper's testimony represents competent, credible evidence that the driver was speeding. Therefore, the factual finding of the trial court that the driver was exceeding the speed limit is not clearly erroneous. We accept the trial court's conclusion that the driver's violation of the traffic laws gave Trooper Seabolt reasonable suspicion to stop the vehicle because the factual findings made by the trial court are supported by competent and credible evidence.

### The Search

{¶20}  In the case at bar, Trooper Seabolt observed marijuana flakes on the pants of the driver during his initial encounter after the traffic stop.

{¶21} When an officer observes incriminating evidence in plain view in a vehicle, the officer may seize such evidence when (1) the initial intrusion that afforded the officer the plain view was lawful; (2) the discovery of the evidence was inadvertent; and (3) the incriminating nature of the evidence was immediately apparent to the officer. *Texas v. Brown*, 460 U.S. 730, 736.739, 103 S.Ct. 1515, 75 L.Ed.2d 502 (1983). The incriminating nature of an object is "immediately apparent" when an officer has probable cause to associate the object with criminal activity. *State v. Halczyszak*, 25 Ohio St.3d 301, 496 N.E.2d 925 (1986), paragraph three of the syllabus. Officers are entitled to rely on their specialized knowledge, training, and experience in 'ascertaining the required probable cause to satisfy the 'immediately apparent' requirement." Id. at paragraph four of the syllabus.

{¶22} The United States Supreme Court recognizes an "automobile exception" to the Fourth Amendment's requirement that police officers must generally obtain a warrant before conducting a search. *State v. Ivery*, 11th Dist Lake No. 2011–L–081, 2012–Ohio–1270, ¶ 23 *citing California v. Carney*, 471 U.S. 386, 390 S.Ct. 2066, 85 L.Ed.2d 406 (1985). Under the automobile exception, there is no need to demonstrate that a "separate exigency" exists to justify the search. *Id. citing Maryland v. Dyson*, 527 U.S. 465, 466, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999). "If a car is readily mobile and probable cause exists to believe that it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more." *Id. quoting Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996).

{¶23} In *State v. Moore*, 90 Ohio St.3d 47, 51, 734 N.E.2d 804 (2000), the Ohio Supreme Court determined " * * * a law enforcement officer, who is trained and

experienced in the detection of marijuana, should not be prohibited from relying on his or her sense of smell to justify probable cause to conduct a search for marijuana." "Once a law enforcement officer has probable cause to believe that a vehicle contains contraband, he or she may search a validly stopped motor vehicle based upon the well-established automobile exception to the warrant requirement." Id. Courts have acknowledged the use of a person's senses—sight, touch, hearing—to identify contraband. *See Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334(1993).

{¶24} In the case at bar, Trooper Seabolt testified that he had five and a half years of experience as a state trooper. Trooper Seabolt testified to his training and experience in identifying marijuana. Trooper Seabolt has been exposed to both burnt and raw marijuana at the state trooper academy and had encountered marijuana, both burnt and raw, well over two hundred times during his tenure as a state trooper. Trooper Seabolt also testified to his training in criminal interdiction, which included one week of training at the state trooper academy; twenty additional hours of criminal interdiction training; and a one-week course in criminal interdiction training through High-Density Drug Trafficking Awareness, a training program provided through a task force. Trooper Seabolt explained that he was trained to identify certain suspicious behaviors of vehicle occupants that are signs of criminal activity. Trooper Seabolt testified that one such suspicious behavior that he often observes is attempting to conceal oneself within one's vehicle.

{¶25} We find Trooper Seabolt's observations within the first several minutes of the traffic stop gave him reasonable, articulable suspicion of criminal activity necessary

to prolong the stop. Indeed, he had probable cause to search the entire vehicle as soon as he observed the marijuana flakes in plain view on the driver's lap. In addition to observing the marijuana flakes in plain view on the driver's lap, Trooper Seabolt heard conflicting stories as to the couples' destination and observed both the driver and Gordon had bloodshot, glassy eyes.

{¶26} We agree there was competent credible evidence for the trial court to determine Trooper Seabolt had sufficient probable cause to search the vehicle. In this case, because probable cause justified the search under the automobile exception, it is irrelevant how long the stop was prolonged in order for the drug detection canine to arrive on the scene.

*Conclusion*

{¶27}  Based on the foregoing, we overrule Gordon's sole Assignment of Error.

{¶28}  The judgment of the Fairfield County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Farmer, J., and

Wise, J., concur