[Cite as *State v. Terry*, 2017-Ohio-2686.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 27102 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 15-TRC-5733 |
| v. | : | |
| | : | (Criminal Appeal from Kettering |
| AMANDA L. TERRY | : |  Municipal Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 5th day of May, 2017.

. . . . . . . . . . .

JOHN D. EVERETT, Atty. Reg. No. 0069911, City of Kettering Prosecutor's Office, 2325 Wilmington Pike, Kettering, Ohio 45420
        Attorney for Plaintiff-Appellee

FRANK M. BATZ, Atty. Reg. No. 0078151, 126 North Philadelphia Street, Dayton, Ohio 45403
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

BROGAN, V.J.

**{¶ 1}** Defendant-appellant Amanda Terry appeals from her conviction and sentence for failure to maintain continuous lanes in violation of City of Kettering ordinance 432.08, operating a vehicle while intoxicated (with a prior offense) in violation of R.C. 4511.19(A)(1)(a), and OVI test refusal in violation of R.C. 4511.19(A)(2).

**{¶ 2}** Kettering Police Officer, Matthew Burian, was on routine patrol on August 10, 2015. At approximately 2:20 a.m., he was at the intersection of Stroop Road and Far Hills Avenue, when he observed a vehicle traveling east on Stroop. He observed the vehicle abruptly cross over the lane markers so that it was straddling the lane marker for the through-lane and the left turn lane. The vehicle then returned to the through lane, and continued traveling on Stroop Road crossing Far Hills Avenue. Burian followed the vehicle. As it approached the intersection with Shroyer Road, Burian observed the vehicle drift into the right lane by approximately three tire widths before drifting back into the left lane of travel. The vehicle then turned left onto Shroyer Road. Burian initiated a traffic stop.

**{¶ 3}** Burian approached the driver, identified as Terry, and asked for her driver's license and proof of insurance. Burian detected a strong odor of alcohol emanating from Terry. He also noted that her eyes appeared glassy and watery, and that her speech was slurred. Terry began sifting through a wallet, and Burian observed numerous items from the wallet fall into her lap. Terry attempted to give Burian a debit card, which he rejected. She then gave him her driver's license, but was unable to provide proof of insurance. Burian asked Terry where she had been, at which time she stated she had dropped a friend off and was heading to her home. Burian noted that she was traveling

in the wrong direction, away from her home, at which time Terry stated that she was stopping at the Shell gas station. Burian noted she had passed the station which was located at the intersection of Stroop Road and Far Hills.

{¶ 4} Burian ran Terry's license through his cruiser computer. He observed that Terry had two prior OVI convictions, at which time he requested backup. Officer Thomas Engles arrived on the scene. Burian then returned to the Chevy, and asked Terry to step out of the vehicle. Burian escorted Terry to a flat driveway. She was unsteady on her feet, and swaying, as she walked. He asked her if she had any physical conditions that would prevent her from performing field sobriety tests. Terry informed him that she had suffered a head trauma approximately ten years earlier, and that she suffered from PTSD as well as a spinal cord condition. Although Burian asked for more specificity, he did not receive any more information from Terry. Terry confirmed that she had no issues with standing or walking normally, and that she did not wear contact lenses.

{¶ 5} Burian proceeded to conduct the horizontal gaze nystagmus (HGN) test, which indicated impairment. He then conducted the Walk and Turn test, as well as the One-Legged Stand test. Both tests indicated impairment. Burian then administered a finger to nose test that is standard for the Kettering Police Department. Again, the test indicated impairment. At that point, Burian placed Terry under arrest. She was transported to the Kettering Police Department jail. Burian asked her to submit to a breathalyzer test, and read her the BMV Form regarding such tests. Terry refused to submit to the test. She was advised that her license would be suspended, at which point she refused to be interviewed further.

{¶ 6} Terry filed a motion to suppress which was overruled by the trial court on September 30, 2015. She subsequently filed a subpoena seeking to have a Veteran's Administration Staff Psychologist testify at trial. On December 31, 2015, the VA sent a letter to Terry's counsel indicating that Terry needed to sign a release for medical records, and that she needed to submit a written request and affidavit to the VA in order to have staff testify at trial. On Jaunary 5, 2016, Terry filed a motion for a continuance of the trial that was set for January 6. The trial court granted the motion, and trial was reset for February 24, 2016.

{¶ 7} On February 17, 2016, Terry reissued a subpoena seeking to have the VA psychologist, as well as a VA medical doctor, testify at trial. On the same day, she filed a motion to compel or to dismiss arguing that the trial court should compel the VA staff to testify at trial, and in the absence of such an order, dismiss the case against her. Attached to the motion was a copy of a notarized note indicating that Terry was unable to perform a breathalyzer test that required her to lock her mouth around a tube. The note was signed by a VA psychologist. Also attached to the motion was a document entitled Request and Demand for Testimony and Records. The request indicated that it was hand-delivered to the Kettering Prosecuting Attorney, but does not indicate a date of service. The motion was overruled.

{¶ 8} On February 22, Terry filed a waiver of trial by jury. A trial to the court was conducted on February 24, 2016. At that time, the parties stipulated that medical records presented by Terry would be admitted into the record. Additionally, defense counsel stated that the VA would not allow its staff to appear at trial. The trial court then noted that the motion to compel or dismiss had been overruled because the records that would

have been testified to were being admitted by stipulation.

{¶ 9} At trial, Terry testified that on the date of the arrest, she had been asleep when an acquaintance called her at approximately 1:45 a.m. asking her for a ride. Terry gave the individual a ride to an address behind the Shell Gas Station located at the corner of Stroop Road and Far Hills Avenue. She testified that she was on her way home, when the acquaintance called to inform her that she had left her purse in Terry's car. Terry testified that she turned around to return to the Shell station when she was stopped. She testified that she informed Burian of her reason for heading back toward the Shell station. Terry denied consuming any alcohol. She testified that she had suffered an assault ten years in the past which damaged her eye sockets, eye muscles and spinal cord. She testified that these injuries prevented her from performing the field sobriety tests. She further testified that she informed Burian that she could not perform a breathalyzer test, and that she had a note to that effect. She testified that she did not refuse to take the breathalyzer. On cross-examination, she admitted that she is able to walk in high heels, and that the psychologist who wrote the note regarding the breathalyzer did not test her actual ability to take such a test.

{¶ 10} Burian testified that Terry did not inform him about returning to the Shell station to return a purse. He further testified that she never mentioned a note regarding her inability to perform a breathalyzer test. He stated that Terry did make comments that indicated she did not understand why she had been stopped or was having to undergo field sobriety tests. Burian testified that Terry kept interrupting him while he read her the Ohio BMV Form 2255 regarding breathalyzer testing, but that she was merely claiming that the breathalyzer was not legal because it was not administered before her arrest.

{¶ 11} Officer Engles testified that he observed Terry swaying as she walked. He testified that she stated that she could not be arrested because she had not taken a breathalyzer test. Engles testified he told her that she would be able to take that test at the jail, to which she responded that she looked forward to it. He testified that she did not mention any note regarding the breathalyzer test or the inability to perform a breath test.

{¶ 12} Terry appeals from her convictions for OVI and refusing a breath test, claiming that they were against the manifest weight of the evidence and based on insufficient evidence. "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). When reviewing whether the State has presented sufficient evidence to support a conviction, the relevant inquiry is whether any rational finder of fact, after viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id.*

{¶ 13} In contrast, "a weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *Wilson* at ¶ 12. When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review

the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 14} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997). The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717.

{¶ 15} Terry claims that her inablility to perform the field sobriety tests was due to her medical conditions. She further contends that she informed Burian that her past facial/head trauma prevented her from being able to perform a breathalyzer test. In support, she submitted medical records indicating that she suffered an attack in 2006 which broke bones in her face. Included therein is a letter from a social worker which mentions that Terry is unable to concentrate. The letter went on to state that it was not known whether the concentration problem was related to her diagnosis of PTSD following the attack, or to traumatic brain injury suffered during the attack. Terry also presented a note from a Veteran's Administration Staff Psychologist which indicated that Terry had facial trauma which rendered her unable to use any standard breathalyzer because she

cannot lock her mouth around a tube.

{¶ 16} A review of the medical records submitted at trial reveals that Terry did in fact suffer an assault that resulted in her serious physical injury as well as psychological injury. However, there are no medical records supporting a diagnosis of traumatic brain injury. While there was evidence to support a finding that Terry suffers from PTSD, the medical evidence does not support a claim that this rendered her incapable of concentrating or understanding the field sobriety instructions. Indeed, an August 2012 record suggests that Terry suffered no limitations of understanding or memory. The record also notes that she follows complex commands.

{¶ 17} While the psychologist's note indicates that Terry was, as of October 2013, unable to perform a breathalyzer test, there was no medical evidence to corroborate this claim or to indicate that the condition continued as of the current offense date, almost two years later. Likewise, there is evidence in the records that as of December 2013, Terry suffered from left-sided numbness with evidence of cervical cord compression. However, the record indicates that the doctor recommended that she engage in physical therapy which, if successful, would eliminate the need for surgery. The record contains no evidence that this injury affects her ability to walk or stand. Further, there is no indication whether the problem still exists. There is also evidence that she suffered a fracture to the bones around the right eye. However, there was no evidence that this resulted in any issues with vision.

{¶ 18} In sum, the medical records submitted by Terry corroborate injury, but they do not corroborate any issues that would impede her ability to perform a field sobriety test. Thus, we cannot say that the evidence was insufficient to convict the defendant,

nor can we say that the convictions are against the manifest weight of the evidence.

{¶ 19} Terry next claims that the trial court committed prejudicial error by violating her Sixth Amendment right to obtain witnesses in her favor. Specifically, she contends that the trial court's refusal to compel a VA doctor and psychologist to testify prevented her from presenting witnesses in support of her current medical condition. She claims that the VA witnesses were necessary to build a foundation for the admission of Terry's medical records, which records support her claim that her medical conditions prevented her from performing the field sobriety tests and the breathalyzer test.

{¶ 20} Pursuant to 5 U.S.C. Section 301, a federal agency may enact regulations governing testimony by its employees. The Veterans' Administration regulations for subpoenaing its employees are set forth at 38 C.F.R. 14. While a federal employee is not exempt from appearing pursuant to subpoena, a state court "may not hold a federal employee in contempt for refusing to comply with a subpoena when he acts in accordance with a validly enacted agency regulation * * *." *Renfrow v. Norfolk S. Ry. Co.*, 140 Ohio St.3d 371, 2014-Ohio-3666, 18 N.E.3d 1173, ¶ 30.

{¶ 21} Terry does not deny that the VA required the submission of a signed medical release, as well as a request for testimony setting forth the necessity of such testimony before its employees would be permitted to testify. *See* 38 C.F.R. 14.804 and 14.805. But she contends that she complied with the requirements. In support, she notes that attached to her motion to compel was a copy of a document entitled Request and Demand for Testimony and Records.

{¶ 22} As stated above, the VA originally sent Terry a letter regarding subpoena requirements on December 31, 2015. The trial court continued the trial, at Terry's

request, due to the need to comply with the VA's requirements. The record indicates that she made no attempt to meet those requirements until just one week prior to the new trial date, approximately a month and a half after the letter from the VA was issued. Further, the copy of the document requesting testimony and records contains no signature or date, and does not indicate that it was ever provided to the VA. There is nothing in the record, other than counsel's statement at the beginning of trial, that the VA refused to provide the employees for trial. From the record before us, it is impossible to tell whether the VA employees were available to testify, or whether Terry's counsel simply chose not to call them to the stand.

{¶ 23} "[T]he constitutional issue of whether these [type of federal] regulations deny defendants a Sixth Amendment right to call and cross-examine witnesses is not reached until the defendants follow the procedures and then have their demands denied." *State v. Hudson*, 8th Dist. Cuyahoga No. 91803, 2009-Ohio-6454, ¶ 32. From this record, we cannot say that Terry complied with the requirements of the VA so that the agency could consider the request and determine whether to grant permission for the testimony. Therefore, we do not reach the claim that the trial court violated Terry's Sixth Amendment rights.

{¶ 24} Further, we can find no prejudice. Terry asserts that the medical employee testimony was necessary to lay a foundation for the introduction of Terry's medical records. But, as noted, medical records were stipulated to by the parties, and made a part of the record. Terry does not claim that any medical records she desired to present were not made a part of the record.

{¶ 25} The decision whether to grant a motion to compel is entrusted to the

discretion of the trial court. *Sojic v. Karp*, 2015-Ohio-3692, 41 N.E.3d 888, ¶ 16 (2d Dist.). We cannot conclude that the trial court abused its discretion by denying the motion to compel in this action.

{¶ 26} Finally, Terry contends that the trial court erred by denying her motion to suppress. In support, she argues that the evidence shows that because she had medical impairments, Burian did not perform the field sobriety tests in substantial compliance with prodecures set by the National Highway Traffic Safety Adminstration. Thus, she contends that Burian did not have probable cause to arrest her.

{¶ 27} "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *State v. Koon*, 2d Dist. Montgomery No. 26296, 2015-Ohio-1326, ¶ 13, *quoting State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.* The application of the law to the trial court's findings of fact is subject to a de novo standard of review. *State v. Gordon*, 5th Dist. Fairfield No. 14–CA–13, 2014-Ohio-5027, ¶ 14, citing *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

{¶ 28} The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under *Terry*, police officers may briefly stop and/or

temporarily detain individuals in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot. *State v. Martin*, 2d Dist. Montgomery No. 20270, 2004-Ohio-2738, ¶ 10, citing *Terry*. We determine the existence of reasonable suspicion by evaluating the totality of the circumstances, considering those circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Heard*, 2d Dist. Montgomery No. 19323, 2003-Ohio-1047, ¶ 14, quoting *State v. Andrews*, 57 Ohio St.3d 86, 87–88, 565 N.E.2d 1271 (1991). "A police officer may stop and detain a motorist when he has a reasonable and articulable suspicion that the motorist has committed, is committing, or is about to commit any criminal offense, including a traffic offense, and no independent reasonable and articulable suspicion of other criminal activity is required under *Terry*." *State v. Chase*, 2d Dist. Montgomery No. 25323, 2013-Ohio-2347, ¶ 17.

**{¶ 29}** At the hearing on the motion to suppress, Burian testified that he observed Terry make two lane violations prior to initiating a traffic stop. Terry, who also testified at the hearing, did not refute this claim. Thus, we conclude that the trial court did not err in finding that Burian had a reasonable suspicion that Terry was committing a traffic offense when he initiated the stop.

**{¶ 30}** We next note that the testimony at the hearing indicates, and was not refuted by Terry, that Burian conducted the field sobriety tests in accordance with the appropriate regulations. Thus, the issue here is not substantial compliance. Instead, Terry's argument goes to the weight of the evidence submitted at the hearing, and whether that evidence demonstrates that Terry's medical conditions rendered her

incapable of performing the tests so as to mandate exclusion thereof.

{¶ 31} Terry testified at the suppression hearing regarding her medical conditions, and her claim that they rendered her incapable of performing the field sobriety tests. However, no medical records or testimony was presented to corroborate her claims.[1] Burian testified that, while Terry did convey the fact that she had suffered a head trauma, she did not inform him that she was incapable of performing the tests or that she had any ongoing medical condition that would impair her performance. Indeed, she indicated that she had no difficulty standing or walking. Both Burian and Engles testified that Terry did not give them any indication that she was unable to perform a breathalyzer test. The trial court was entitled to give more credence to the testimony of the officers than to Terry.

{¶ 32} On these facts we have little difficulty concluding that sufficient indicia of impairment existed to cause a prudent officer to conclude that Terry was impaired: two separate lane violations; glassy/watery eyes; strong odor of alcohol; slurred speech; fumbled papers; attempt to give Burian a debit card rather than an operator's license; prior OVI; and performance on the field-sobriety tests. Taken together, these indicia established probable cause to believe that Terry was driving under the influence. Thus, we conclude that the trial court did not err in overruling the motion to suppress.

{¶ 33} Based upon the record before us, we overrule all of Terry's Assignments of Error, and affirm the judgment of the trial court.

. . . . . . . . . . . . .

---

[1] At the time of the suppression hearing, Terry had taken no steps to obtain or introduce any medical information.

HALL, P.J. and WELBAUM, J., concur.

(Hon. James A. Brogan, Retired from the Second District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).


Copies mailed to:

John D. Everett
Frank M. Batz
Hon. Frederick W. Dressel