OPINION
{¶ 1} Defendant-appellant George E. Pillow appeals from his conviction and sentence for one count of aggravated robbery, in violation of R.C. § 2911.01(A)(1), a felony of the first degree.
 {¶ 2} On August 2, 2007, Pillow was charged by secret indictment with one count of *Page 2 
aggravated robbery. At his arraignment on August 10, 2007, Pillow entered a plea of not guilty.
 {¶ 3} Prior to the trial in this matter, Pillow requested that he be allowed to proceed pro se. On October 10, 2007, the trial court held a hearing in order to rule on Pillow's request. After the hearing, the trial court granted Pillow's request to proceed pro se, and he signed a written waiver of counsel. The trial court appointed stand-by counsel in the event Pillow changed his mind regarding his decision to represent himself.
 {¶ 4} The matter proceeded to trial on November 19, 2007, after which the jury found Pillow guilty of aggravated robbery. On November 20, 2007, the trial court sentenced Pillow to a term of eight years in prison. Pillow filed a timely notice of appeal with this Court on December 14, 2007.
 I {¶ 5} The incident which forms the basis for Pillow's arrest and subsequent conviction occurred on July 25, 2007, at the East End Drive Thru in Xenia, Ohio. Pillow entered the office of the owner, Daniel Morah, and demanded that Morah pay him $200.00. At the time he demanded the money, Pillow was brandishing a knife.
 {¶ 6} Morah refused to give Pillow the money, and he eventually persuaded Pillow to hand over the knife, as well. Pillow then asked Morah for the $200.00 a second time. Pillow told Morah that one of his employees owed him $200.00. Morah refused again, and Pillow reduced his demands to $50.00 and a pack of cigarettes. Morah complied with Pillow's final request, and Pillow left the drive thru.
 {¶ 7} Morah contacted the police on July 26, 2007, the day following the incident. He *Page 3 
reported the robbery to Officer James Dray of the Xenia Police. A probable cause warrant was issued, and Pillow was subsequently taken into custody and charged with aggravated robbery.
 {¶ 8} After a jury trial in which he acted as his own counsel, Pillow was found guilty of aggravated robbery and sentenced accordingly. It is from this judgment that Pillow now appeals.
 II {¶ 9} Pillow's sole assignment of error is as follows:
 {¶ 10} "THE TRIAL COURT DENIED APPELLANT'S HIS RIGHTS TO DUE PROCESS, EFFECTIVE ASSISTANCE OF COUNSEL, AND A FAIR TRIAL BY PROVIDING APPELLANT WITH INADEQUATE ADVICE CONCERNING HIS WAIVER OF COUNSEL."
 {¶ 11} In his sole assignment, Pillow contends that the trial court erred when it held that Pillow made a knowing and intelligent waiver of his right to counsel. Pillow argues that the trial court failed to adequately advise him regarding his decision to proceed without the benefit of counsel. Specifically, Pillow asserts that the trial court "failed to adequately explain the nature of the charge against him, the statutory elements of the charge, the range of allowable punishments, possible defenses, mitigation, or other facts essential to [Pillow's] broad understanding."
 {¶ 12} Pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution, a criminal defendant has the right to assistance of counsel for his defense. The Sixth Amendment also guarantees a criminal defendant the independent constitutional right of self-representation. Thus, a defendant may *Page 4 
proceed to defend himself without the benefit of counsel when he voluntarily, knowingly, and intelligently elects to do so. State v.Youngblood, Clark App. No. 05CA0087, 2006-Ohio-3853, citing State v.Gibson (1976), 45 Ohio St.2d 366, 345 N.E.2d 399.
 {¶ 13} Crim. R. 44(A) states in pertinent part:
 {¶ 14} "Where a defendant charged with a serious offense is unable to obtain counsel, counsel shall be assigned to represent him at every stage of the proceedings from his initial appearance before a court through appeal as of right, unless the defendant, after being fullyadvised of his right to assigned counsel, knowingly, intelligently, andvoluntarily waives his right to counsel" (Emphasis added.)
 {¶ 15} When a criminal defendant is charged with a serious offense, and "elects to proceed pro se, the trial court must demonstrate substantial compliance with Crim. R. 44(A) by making a sufficient inquiry to determine whether the defendant fully understood and intelligently relinquished his or her right to counsel." State v. Martin,103 Ohio St.3d 385, 816 N.E.2d 227, 2004-Ohio-5471, citing State v. Gibson,45 Ohio St.2d 366, 345 N.E.2d 399. A "serious offense" is any felony. Crim. R. 2(C).
 {¶ 16} "To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation *Page 5 
thereof, and all other facts essential to a broad understanding of the whole matter. * * *" Von Moltke v. Gillies (1948), 332 U.S. 708, 68 S.Ct. 316.
 {¶ 17} Contrary to the assertions made by Pillow in his merit brief, the trial court strictly complied with Crim. R. 44(A), as well as the holding of the U.S. Supreme Court in Von Moltke, supra. Even a cursory glance at the record establishes that the trial court engaged in the proper inquiry to determine whether Pillow fully understood and intelligently relinquished his right to counsel. This point is best illustrated by the following excerpts from the October 10, 2007, hearing on Pillow's request to proceed pro se:
 {¶ 18} "The Court: * * * In Case No. 2007-CR-556, you're charged with Aggravated Robbery, a felony of the first degree. The sentence the Court can impose on a conviction there would be a sentence of either three years, fours years, five years, six years, seven years, eight years, nine years or ten years, as well as a $20,000.00 fine.
 {¶ 19} "Now, those are the penalties on a conviction you could face in both of those. So I want you to clearly understand when you say things can't get worse, they can get worse. Do you understand that? Do you understand that, Mr. Pillow?
 {¶ 20} "Pillow: Yeah, they can't get no worse for me.
 {¶ 21} "The Court: Well, I can't — I can't decide for you what you feel is bad, but I want you to fully understand what it is you are facing.
 {¶ 22} "Have you ever represented yourself before in Court?
 {¶ 23} "Pillow: Nope."
 {¶ 24} "* * *
 {¶ 25} "The Court: Do you understand that if you represent yourself, that by not having *Page 6 
an attorney you will not have someone who understands the law, understands the Court process, can interview witnesses and prepare a defense to your case? Do you understand that?"
 {¶ 26} "* * *
 {¶ 27} "The Court: Mr. Pillow, why do you not pay attention to what's going on here? I am addressing with you your right to represent yourself or have Counsel. I have to ask you questions. Will you allow me to do that?
 {¶ 28} "Pillow: Yeah.
 {¶ 29} "The Court: Now, do you understand the nature of the charges that I just indicated you're facing; * * * the Aggravated Robbery charge? Do you know what those accuse you of doing?
 {¶ 30} "Pillow: Yeah.
 {¶ 31} "The Court: And do you understand that I just indicated to you what the possible penalties for those are? Do you understand that?
 {¶ 32} "Pillow: Yes.
 {¶ 33} "The Court: And do you understand that each of these type of cases have possible defenses to them? * * *. Do you understand that?
 {¶ 34} "Pillow: Yeah."
 {¶ 35} "* * *
 {¶ 36} "The Court: Because you're still facing an Aggravated Robbery charge. On the Aggravated Robbery charge, do you understand there's also possible defenses to that as well, such that the elements are not made in that defense because aggravated robbery, it says while committing or attempting to commit a theft offense or immediately fleeing thereafter, that you *Page 7 
had a deadly weapon upon your person or displayed that weapon or indicated that you could use the weapon.
 {¶ 37} "That particular charge could be — a defense could be failure to establish any of those elements; the fact that you're not the person who was involved with it; that someone else did it; that there was some sort of self-defense or failure of the ability to have the mental capacity to commit the offense. These are the type of defenses that could apply in these kind of cases. Do you understand that, in an Aggravated Robbery case?
 {¶ 38} "Pillow: Mmm-hmm. * * *.
 {¶ 39} "The Court: All right. Now, you understand that by waiving Counsel or waiving the right to an attorney, that you would lose the opportunity to have someone who has years of education and experience in the Courtroom who could be of great value and assistance in representing you? Do you understand that?
 {¶ 40} "Pillow: Yeah."
 {¶ 41} "* * *
 {¶ 42} "The Court: Now, do you understand everything that I've discussed with you regarding what your rights are and what you give up by representing yourself?
 {¶ 43} "Pillow: Yes.
 {¶ 44} "The Court: Has anyone, either the Court or anyone else, told you you have no choice but to do this? Do you understand you have the right to have an attorney if you want?
 {¶ 45} "Pillow: Yes.
 {¶ 46} "The Court: Is anyone — are you doing this voluntarily?
 {¶ 47} "Pillow: Yes. *Page 8 
 {¶ 48} "The Court: No one is forcing you to make this decision?
 {¶ 49} "Pillow: No.
 {¶ 50} "The Court: And you also understand you have the right to change your mind anytime you want if you wish to represent yourself?
 {¶ 51} "Pillow: Yes.
 {¶ 52} "The Court: And you understand that it's my advice to you that this is not a good decision?
 {¶ 53} "Pillow: Yes.
 {¶ 54} "The Court: But you also understand you have a Constitutional right to represent yourself?
 {¶ 55} "Pillow: Yes."
 {¶ 56} After this exchange occurred, the trial court appointed stand-by counsel to represent Pillow in the event he changed his mind regarding his decision to proceed pro se. Pillow also signed a written waiver of counsel form provided to him by the trial court. The court then informed Pillow that he needed to issue subpoenas in order to secure witnesses for trial and ordered the State to provide him with full discovery regarding his case. It is also important to note that the trial court briefly questioned Pillow regarding his decision to represent himself immediately prior to the start of the trial on November 19, 2007. After Pillow reaffirmed his desire to proceed without the benefit of counsel, the trial court had him sign a second waiver of counsel.
 {¶ 57} It is abundantly clear from the record before us that the trial court made every conceivable effort to ensure that Pillow's decision to represent himself was made voluntarily, *Page 9 
knowingly, and intelligently. Pillow was fully informed of the nature of the charge against him, the statutory elements of the charge, the range of allowable punishments, possible defenses, mitigation, as well as other facts essential to Pillow's understanding of the trial process. The trial court's repeated admonitions to Pillow clearly comply with the waiver requirements set forth in Von Moltke, supra. In fact, the manner in which the trial court chose to deal with Pillow's request to represent himself is a textbook example of the proper way to handle a defendant's decision to proceed without the benefit of counsel. Pillow was provided every possible opportunity to change his mind and accept the services of an attorney; however, he chose to act without the benefit of counsel and was found guilty. We cannot fault the trial court for allowing Pillow to proceed after he was fully informed of the hazards involved in that course of action. Thus, we find that Pillow voluntarily, knowingly, and intelligently waived his right to counsel.
 {¶ 58} Pillow's sole assignment of error is overruled.
 III {¶ 59} It should be noted that Pillow repeatedly argues in his merit brief that he was denied the right to subpoena witnesses, as well as denied the right to utilize legal material in the jail's law library in order to properly prepare for trial. With respect to his contention that he was denied the right to subpoena witnesses for trial, Pillow's argument is undermined by the following exchange:
 {¶ 60} "The Court: * * * Now, just to go into a little bit of the trial, Mr. Pillow, have you subpoenaed any witnesses to testify?
 {¶ 61} "Pillow: Yes. *Page 10 
 {¶ 62} "The Court: Okay. When did you have them scheduled to come in?
 {¶ 63} "Pillow: They're right behind me.
 {¶ 64} "The Court: Oh, your witnesses are here?
 {¶ 65} "Pillow: Yes.
 {¶ 66} "The Court: Oh, okay. Two witnesses?
 {¶ 67} "Pillow: Yes.
 {¶ 68} "The Court: Okay.
 {¶ 69} "Pillow: I would like to have another one, but there wasn't enough time because all the requests that you required the jail to give me, none of it happened. Since that day, I've never got no law books, never got no help, no phone calls, no nothing. So, actually, I'm not prepared, but I'm going with it anyway"
 {¶ 70} At this point, Pillow should have asked the trial court for a continuance in order to further prepare for trial, i.e. subpoena the missing witness and study the applicable law. Instead, Pillow waived these arguments when he elected to proceed with the trial. Pillow's decision to proceed under these circumstances is a perfect example of the importance of a properly trained attorney in a criminal trial. Had Pillow enlisted the services of counsel, his attorney would have subpoenaed all of the relevant witnesses, as well as understood the proper procedure to be followed during trial. By voluntarily, knowingly, and intelligently waiving his right to counsel, Pillow intentionally put himself at a disadvantage that he cannot now blame on the trial court.
 IV {¶ 71} Pillow's sole assignment of error having been overruled, the judgment of the trial *Page 11 
court is affirmed.
WOLFF, P.J. and BROGAN, J., concur.
Copies mailed to:
Elizabeth A. Ellis
Ben Swift
 Hon. Stephen A. Wolaver