[Cite as *State v. West*, 2017-Ohio-7521.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 2015-CA-72 |
| | : | |
| v. | : | Trial Court Case No. 2015-CR-129 |
| | : | |
| THOMAS M. WEST | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 8th day of September, 2017.

. . . . . . . . . . .

NATHANIEL R. LUKEN, Atty. Reg. No. 0087864, Assistant Prosecuting Attorney, Greene County Prosecutor's Office, 55 Greene Street, First Floor, Xenia, Ohio 45385
    Attorney for Plaintiff-Appellee

ALEKSANDR F. KOCHANOWSKI, 4173 Forest Avenue, #2, Cincinnati, Ohio 45212
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant Thomas West appeals from his conviction and sentence for felonious assault, tampering with evidence, and having weapons under disability. He contends that the trial court erred with regard to the imposition of costs and attorney fees. He further contends that the trial court erred by denying his motion to suppress. Finally, he contends that the trial court improperly denied him his right to represent himself. Along with all of these claims, West contends that trial counsel was ineffective for not properly addressing the issues in the trial court.

{¶ 2} We conclude West has failed to demonstrate error with regard to costs and attorney fees. We further conclude that the trial court did not err in denying the motion to suppress. We also find no error in the trial court's decision to deny West's request to represent himself. Finally, we conclude that West has failed to demonstrate ineffective assistance of counsel.

{¶ 3} Accordingly, the judgment of the trial court is affirmed.

## I. Facts and Procedural History

{¶ 4} On February 22, 2015, Jasmin West was in her home located on Cedarwood Drive in Fairborn, Ohio. At that time, she lived in the home with her three children. Her father, Thomas West, had moved into the home with her approximately eight months prior, and was living in the basement. Jasmin's grandfather was living in the garage of the residence. On that date, West came upstairs from the basement at which time he stepped in dog feces. West began to scream profanities at Jasmin's nine-year old child. Jasmin informed West that he could move out. West then left the residence for about an

hour. When he returned he appeared to be intoxicated and angry. He then went down to the basement. After approximately 45 minutes, Jasmin heard West return to the first floor and then heard a "thud." Jasmin then heard West leave the kitchen. When she entered the kitchen she observed a shotgun on the table. She hid the shotgun.

{¶ 5} A few minutes later, West came back upstairs with a handgun. He ordered his daughter to return his shotgun. When she did not, he fired his handgun by her head hitting her laptop computer screen. Jasmin stood up and heard ringing in her ears. She began to pick up glass from the floor. As she was doing that, she called 911 and hid the phone where West would not see it. West then stated that he was going to kill everyone in the house. He grabbed his daughter and held the gun to her head while stating that he would "blow [her] f'ing brains out." Tr. p. 183. Jasmin's daughter then walked toward the kitchen. West told the child to "shut up or he'll blow her f'ing face off." Tr. p. 185. West pointed the handgun in the child's direction. West continued to demand the return of his shotgun. Jasmin returned the shotgun and West returned to the basement. Jasmin and her children left the house.

{¶ 6} Greene County Sheriff's Deputy Jason Davis was dispatched to the Cedarwood Drive home as a result of Jasmin's 911 call. The dispatcher, during the 911 call, was able to hear people arguing. The dispatcher also heard a female telling someone that they did not need to carry a loaded gun. Davis, his sergeant, and several other deputies arrived at the residence. They located Jasmin and her children approximately four houses away from her home, hiding behind a residence. She and her children were placed in a Fairborn EMS unit for a welfare check because they had been outside in the snow. West was arrested and transported from the scene. After

Jasmin was unable to locate the firearms in the home, she gave the officers permission to search the home's yard for the firearms. The officers found a shotgun, shotgun shells, and West's wallet underneath a mobile home located in the backyard.

{¶ 7} Greene County Sheriff's Department Detective Kyle Metz was assigned to the case. On February 24, he returned to the home to look for the handgun that Jasmin had stated was used in the commission of the offense. Sheriff's Department Detective Shawn Bradley and another detective were also present. The detectives met Jasmin at the home and she executed a consent to search form. The detectives used a metal detector in the backyard where they located a shotgun shell.

{¶ 8} Thereafter, Detective Bradley returned to the residence after Jasmin informed him that she had found the handgun. Jasmin again gave consent to search the premises and then led him to the handgun which was located between a cinder block and a tire of the mobile home.

{¶ 9} West was indicted on two counts of felonious assault in violation of R.C. 2903.11(A)(2) with accompanying firearm specifications; two counts of having weapons while under disability in violation of R.C. 2923.13(A)(2); and one count of tampering with evidence in violation of R.C. 2921.12(A)(1). The indictment also contained a forfeiture specification.

{¶ 10} On March 6, 2015, West appeared for an arraignment. At that time, appointed counsel was unable to be present, however, another attorney appeared with West. West informed the court that he had not talked to anyone and that he would be representing himself. West then stated that he wanted to have the indictment dismissed as it was not in conformity with the Ohio Constitution. The trial court informed him that

the arraignment would be postponed until he could talk to counsel, and that it would take his motion under advisement.

{¶ 11} On March 13, 2015, West and appointed counsel appeared for arraignment. West began to object to the proceedings arguing that the court did not have jurisdiction over him because he is not subject to a commercial transaction as he did not contract with the State of Ohio which he claimed is a corporation. He further stated that he is a "natural man, free and independent" under "Article 1, Section 1". West further denied that he was under indictment. The trial court again continued the arraignment to a later date.

{¶ 12} On March 17, West and appointed counsel again appeared for arraignment. Counsel informed the court that he had met with West, and that he had explained the proceedings to West. West then stated:

Yeah, your Honor, I would like to move to invoke the jurisdiction of this Court under Article 1 Section 16 as me being an Article 1 Section 1 natural person, free and independent of any corporate law or commercial law, and invoke the jurisdiction of Article 4 Section 4, the Court of Common Pleas in and for Greene County, Ohio, the republic state, and not the Greene County Common Pleas Court pursuant to the Ohio Revised Codes. I, on record I want to be in the constitutional Court of Common Pleas and not the commercial court, sir.

{¶ 13} The court then permitted West to engage in argument regarding jurisdiction for approximately 20 minutes. The trial court asked West to talk with counsel about the issues he wanted to raise. The trial court entered a plea of not guilty on behalf of West

because he refused to enter any plea. Ultimately, the court set the matter for jury trial on April 27, 2015. The trial court also set bond.

{¶ 14} The next day, counsel filed a motion for dismissal and other relief arguing that the trial court did not have subject matter jurisdiction because West is not a commercial or corporate entity while the court is a commercial court. Counsel also filed a motion for a competency evaluation and a notice that West was entering a plea of not guilty by reason of insanity. The trial court overruled the motion to dismiss. However, a competency evaluation was ordered.

{¶ 15} On April 23, 2015, West and appointed counsel appeared before the court. West immediately entered an objection stating that he was not a defendant and that he did not consider his appointed counsel to be his attorney. At that time, the court noted that counsel had filed a motion to withdraw. West again argued jurisdiction. The trial court noted that West wanted to represent himself at which point West stated that he wanted an attorney. Counsel then noted that all motions he had filed were based upon his understanding of what West wanted him to do following conversations with West. West again repeated that he wanted a lawyer to represent him.

{¶ 16} On July 7, 2015, a hearing was held on the issue of competency to stand trial. During the hearing, West again raised the issue of jurisdiction and indicated that he wanted a different lawyer. Then he stated that he had no problem with his appointed counsel being his assistant. The trial court found West competent to stand trial. A request for a second evaluation was made to determine West's legal sanity at the time of the offenses. The request was granted.

{¶ 17} Counsel subsequently filed both a motion to suppress and a motion to

dismiss three of the five indicted offenses. Counsel also filed a document titled Motion to Certify Written and Oral Statements of Witnesses as Sworn Affidavits. A hearing on the motion to suppress was conducted on September 2, 2015. The trial court overruled the suppression motion by entry dated September 22, 2015.

{¶ 18} A hearing on the issue of West's sanity at the time of the offenses was conducted on October 21, 2015. After the trial court ruled, in open court, that the evidence demonstrated West was sane at the time of the offenses, West began to discuss the facts of his case. The trial court then informed him not to talk about the case because anything he said in court could be used against him at trial. Then West again raised the issue of personal jurisdiction. He informed the court that he has studied the law for more than 25 years and that he knows the court system consists of a dual system with a constitutional court and a commercial court. The court again informed West that it had previously determined that it had jurisdiction and that West could appeal that decision. West then referred to appointed counsel as his assistant.

{¶ 19} On October 21, 2015, West, acting pro se, filed a document titled Demand For Remedy in which he asked the court to dismiss the case because the court failed to prove that it had personal jurisdiction over him. The trial court overruled the motion. Appointed counsel then filed a motion for a transcript of all hearings conducted up to that time.

{¶ 20} On November 13, 2015, West, again pro se, filed an amended motion to dismiss in which he noted that he had "adamantly objected" to the criminal prosecution which he deemed to be a commercial transaction. The motion was overruled.

{¶ 21} Also on November 13, 2015, West, acting pro se, filed a document entitled

Writ of Habeas Corpus and/or other Relief with this Court. By Decision and Judgment Entry dated February 10, 2016, we dismissed the writ as fatally defective.

{¶ 22} A jury trial was conducted on November 16 and 17, 2015. At the start of the trial, outside of the presence of the jury, the following colloquy was had[1]:

> DEFENDANT: Well, that motion also provides that Mr. Nowicki was not my Counsel of record or never has been.
>
> THE COURT: Well, let me tell you something, Mr. West - -
>
> DEFENDANT: He is not representing my agent - -
>
> THE COURT: Hang on - -
>
> DEFENDANT: - - in this case.
>
> THE COURT: - - hang on, Mr. West. We're proceeding forward with the trial today, okay? Now you have a choice, and I'll just tell you right now, these are your choices: Mr. Nowicki is a licensed attorney who is very competent. He's won several trials - -
>
> DEFENDANT: And he's not representing my agent.
>
> THE COURT: Would you let me finish? Let me finish. I listened to you. Please listen to me. He is a very accomplished attorney who knows how to defend a person accused of a crime. He has been appointed to be your attorney. You have a choice. He can either be your attorney and represent you in this case, or, you have a Constitutional right to represent

---

[1] This exchange is similar to all of the other exchanges between West and the court during the course of the proceedings. It is, however, the only time the trial court expressed frustration or impatience. For an explanation of West's claims regarding the jurisdiction of the court and his status as a natural or commercial entity, *see State v. Few*, 2d Dist. Montgomery No. 25969, 2015-Ohio-2292.

yourself in which case, Mr. Nowicki will then move to the other side of the rail and will simply be waiting there to answer any questions you might have of him or to come back into the case if you choose to have him re-represent you. This is a decision you make. If Mr. Nowicki is your lawyer, he will speak for you during the course of this trial. You will not have a speaking part. If you choose to represent yourself, then the case is yours, and you can say whatever you feel is appropriate with the guidelines of the rules of evidence, and we'll proceed forward. Those are your decisions, and that's the way I'm going to handle this trial.

DEFENDANT: I told this Court the very first time I spoke to him in this cause that I was representing myself.

THE COURT: Well, we have - -

DEFENDANT: Not my agent, but myself. The Article 1 Section 1 free and independent man. Not my agent. Not my artificial agent.

THE COURT: Mr. West, you want - -

DEFENDANT: You have - -

THE COURT: Hang on.

DEFENDANT: - - you and Mr. Nowicki have conspired together to put this commercial transaction together under the guise of a criminal prosecution and trying to shove it down my throat. That's a crime in this State, and I've made an affidavit, which you blew off. An affidavit undisputed stands as law.

THE COURT: Okay. Now do you want him to represent you or do

you want to represent yourself?

DEFENDANT:    He's  never represented me.

THE COURT:    So you're telling me you want to - -

DEFENDANT:    He's never represented my agent, and I will put together my affirmative defense if I can have my law books, I need some law books.

THE COURT:    We got [sic] a trial starting in a few minutes.  It's your choice to represent yourself or have Mr. Nowicki represent you. But if you wish to represent yourself, I have to make a record, and I will do so.

DEFENDANT:    The record should state, he is not representing my artificial agent and I am not representing my artificial agent, period.  This Court - -

THE COURT:    All right.  You have a choice, either he - -

DEFENDANT:    - - this Court has, does not have jurisidiciton - -

THE COURT:    Mr. West, either he represents you or you represent yourself.  I can only handle it one of two ways.  I'm going to let you have a moment to answer the question - -

DEFENDANT:    Does this Court have a - -

THE COURT:    - - I want him - -

DEFENDANT:    - - written agreement - -

THE COURT:    Sir, sir - -

DEFENDANT:    - - between myself - -

THE COURT:    All right.  We're going to take a break.  I'm bringing

the jury in.

DEFENDANT: I need some law books if I'm going to represent myself.

THE COURT: You have to tell me whether you want to represent yourself or not. You've got the call.

DEFENDANT: I'm not representing any artificial agent. Do you know what an artificial agent is, your Honor?

THE COURT: We have decided that issue. It has been done. The Court of Appeals will rule on that, but I am done with that argument, okay? We are done with that. You either represent yourself - -

DEFENDANT: Well, if you're breaking, if you're violating the law, maybe somebody ought to arrest you.

THE COURT: I'll tell you what Mr. West, let me explain something to you, I'd hoped I did not have to do right now, but I'm going to do it right now. My only job in this trial is to see you receive a fair trial, all right? That's my only job. However, in order to do that, you have to help me give a fair trial to you. If you choose not to cooperate with my efforts to give you a fair trial, I will tell you something, I'm going to have you removed from this courtroom. You wil be someplace else, and you'll be able to watch this trial, and that's your choice. You can either choose to do that now or I can order you out of this courtroom if you choose not to allow me to give you a fair trial. I put you on notice.

DEFENDANT: I ask one question to this Court, and it still hasn't been answered - -

THE COURT: Yes, I have answered the question. We're going forward with this trial.

DEFENDANT: I understand that. And is this trial a commercial prosecution - -

THE COURT: I've answered that question.

DEFENDANT: I haven't heard the answer.

THE COURT: I denied that. That is denied.

DEFENDANT: This is not a commercial prosecution?

THE COURT: Your motion is denied, we're going forward with the charges in the indictment. Now, do you want Mr. Nowicki to represent you or do you want to represent yourself?

DEFENDANT: He's never represented my agent.

THE COURT: You haven't answered my question. Do you want him speaking for you - - yes, or no?

DEFENDANT: No.

THE COURT: All right.

DEFENDANT: Nobody's representing - -

THE COURT: So you want to represent - -

DEFENDANT: - - my commercial agent in this, in this court.

THE COURT: Do you want to represent yourself? You do not want - - let me put it this way: You do not want Mr. Nowicki going forward in this trial, is that what you're telling me?

DEFENDANT: I'm not a defendant in this trial, your Honor.

THE COURT: That's not the question. Mr. Nowicki is either going to sit there and speak for you or he's going to sit out in the gallery and keep his mouth shut. Those are the choices you have.

DEFENDANT: Then I guess he's sitting in the gallery.

THE COURT: All right. Hang on a second.

DEFENDANT: Because he doesn't represent my agent.

THE COURT: Hang on one second. All right, Mr. West, I am required to ask you some questions before I proceed forward with you representing yourself.

DEFENDANT: I'm not representing my agent.

THE COURT: All right. That's fine. For you - - you can do what you want. I'm not saying you have to do anything. You've just told me you want Mr. Nowicki to be standby counsel, and I'm going to proceed with that.

DEFENDANT: Mr. Nowicki has never represented my commercial artificial agent as defined by Revised Code 1.02(A).

THE COURT: Have you ever represented yourself before in the past in a criminal proceeding?

DEFENDANT: No.

THE COURT: Okay. Oh, can you get the waiver form prepared? Now you understand that you have a right not to have Mr. Nowicki represent you, do you understand that?

DEFENDANT: Again, I will say, he has never represented me or my agent. You're the one who put that into his head, and he's the one that put

it into your head.   I've had nothing to do with it.   I've - -

THE COURT:          Do you understand - - okay.

DEFENDANT:          I've sat over in that jail for three or four months - -

THE COURT:          Do you understand what the charges are against you in this case?

DEFENDANT:          The public offenses, yes, I do.

THE COURT:          All right.

DEFENDANT:          And, and - -

THE COURT:          And do you know what the - -

DEFENDANT:          And excuse me.   There was a motion, first time I was tried to be arraigned in which I objected and moved that the indictment be dismissed, because its contrary to the laws of the State, and it's contrary to my rights.

THE COURT:          Okay.   Do you understand that - -

DEFENDANT:          It's an indictment of an artificial agent.

THE COURT:          Okay.   Let me, let me talk.   Okay.   I'm trying to get this thing resolved.

DEFENDANT:          And I moved to have it dismissed.   That's never been ruled on, your Honor.

THE COURT:          I've ruled on everything you've filed and that's done. Now, do you understand in Count 1 - -

DEFENDANT:          That was, that was an open court - -

THE COURT:          Mr. West, do you understand in Count 1 you could

receive eight years if you're convicted for that offense; do you know that?

DEFENDANT: I have never been indicted nothing [sic], your Honor.

THE COURT: You also - - so you don't know what the penalty is?

DEFENDANT: I have never been indicted for anything, your Honor.

THE COURT: All right. Mr. West, I'll tell you what, here's what we're going to do - -

DEFENDANT: I'm just, I'm being honest with you.

THE COURT: Let me talk. I'm moving forward with this trial, Mr. West. We're doing it my way. Do you understand? Now, let me tell you something about that. I've already told you that we're going forward with this trial, and I have told you we'll do it without you. Because you are unwilling to talk to me about Mr. Nowicki not representing you, he's going to be your lawyer, all right? Now the next time in front of this jury that you disrupt this trial, I'm going to give you a warning. The second time you disrupt this jury, I'm removing you from this courtroom, and we're going to do your trial without you being present, all right? And I'm not going to worry about whether he's your agent or not your agent or who the hell you are. I don't care. The bottom line is, we'll go forward with this trial, and to tell you the truth, it's a lot easier for me to give you a fair trial without you being here, because you're doing everything you can to say to this jury, I want to be convicted. I'm sorry. I hate to say that. I want you to have a fair trial, but you're not helping me. And I've laid out the ground rules here, and this is the way we're going to do it. If you do not want Mr. Nowicki to represent

you, I have some questions I have to ask you.

DEFENDANT:     Okay.

THE COURT:     And if you'll answer the questions, we'll proceed forward. Otherwise, he's your lawyer. We're proceeding forward.

DEFENDANT:     Okay. Mr. Nowicki, who is he representing, me or my - -

THE COURT:     You have to answer that question.

DEFENDANT:     - - artificial agent?

THE COURT:     You have to answer that, not me.

**{¶ 23}** Thereafter the matter was tried to the jury. West was convicted on one count of felonious assault with a firearm specification, both counts of having weapons under disability, and the count of tampering with evidence. The State dismissed the forfeiture specification. West was sentenced to an aggregate prison term of seven years. A timely notice of appeal was filed by trial counsel.

**{¶ 24}** Appointed appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), in which counsel represented that there were no potentially meritorious issues for review. West was notified of the filing and was given time to file his own appellate brief. He then proceeded to file numerous documents with this court regarding the jurisdictional issues raised below. This court assigned new appellate counsel who asserted the following assignments of errors.

## II. Court Costs

**{¶ 25}** West's first assignment of error states as follows:

THE COST BILL ENTERED AS AN EXECUTION FOR THE COLLECTION

OF COSTS AND FEES AGAINST APPELLANT IS CONTRARY TO LAW.

**{¶ 26}** West contends that he was improperly ordered to pay court costs and attorney fees. He argues that the court failed to consider his present and future ability to pay in accordance with R.C. 2929.19(B)(6) and to specify the amount of costs at sentencing. He further argues that counsel was ineffective for failing to seek a waiver of costs during the sentencing hearing.

**{¶ 27}** We begin by noting that the trial court did not order West to pay attorney fees. Thus, that argument has no merit.

**{¶ 28}** Court costs, which are governed by R.C. 2947.23, do not constitute financial sanctions. *State v. Smith*, 3d Dist. Allen No. 1–07–32, 2007–Ohio–6552, ¶ 11. Therefore, R.C. 2929.19 is inapplicable to court costs, and the trial court need not consider a defendant's ability to pay under R.C. 2929.19 prior to imposing court costs. Further, "the court's imposition of court costs is not erroneous due to the court's failure to specify the amount of court costs at sentencing." *State v. Lux*, 2d Dist. Miami No. 2010 CA 30, 2012-Ohio-112, ¶ 49. We have held that the failure to specify the amount at sentencing does not affect the order's finality and the itemized bill may be calculated later. *State v. Murillo*, 2d Dist. Montgomery No. 21919, 2008–Ohio–201, ¶ 14. Thus, we conclude that West's arguments regarding the trial court's imposition of costs fail.

**{¶ 29}** We next turn to the issue of whether counsel was ineffective for failing to seek a waiver of costs at sentencing. In order to establish ineffective assistance of counsel, a defendant must show that his trial counsel's performance was both deficient and prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80

L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141–142, 538 N.E.2d 373 (1989). With respect to deficiency, a defendant must show that his counsel's performance "fell below an objective standard of reasonableness." *Strickland* at 688, 104 S.Ct. 2052, 80 L.Ed. 2d 674. With respect to prejudice, it must be shown that there is a reasonable probability that but for counsel's unprofessional errors, the outcome of the proceeding would have been different. *Id.* at 694, 104 S.Ct. 2052, 80 L.Ed. 2d 674.

{¶ 30} Under R.C. 2947.23, a trial court is required to impose court costs against all convicted defendants, even those who are indigent. *See State v. White*, 103 Ohio St.3d 580, 2004–Ohio–5989, 817 N.E.2d 393, ¶ 8. The trial court, however, has the discretion to waive court costs if the defendant makes a motion to waive costs. *State v. Mihalis*, 8th Dist. Cuyahoga No. 104308, 2016-Ohio-8056, ¶ 30.

{¶ 31} Under R.C. 2947.23(C), as amended by Am.Sub.H.B. 247, effective March 22, 2013, the trial court "retains jurisdiction to waive, suspend, or modify the payment of the costs of prosecution * * *, at the time of sentencing or at any time thereafter." Thus, there is no limit on when a defendant can move for a waiver of costs. This makes it almost impossible to find that counsel was ineffective for failing to raise the issue at sentencing. " 'The statutory provision in R.C. 2947.23(C) adds another facet to our ineffective assistance of counsel analysis because a defendant is no longer required to move for a waiver of court costs at the sentencing hearing or waive it—strategic timing may now play a role in trial counsel's decision—and prejudice resulting from a failure to move at the sentencing hearing is harder, if not impossible, to discern. Trial counsel may have decided as a matter of strategy not to seek a waiver or modification of court costs until some later time when the trial court had time to either reflect upon its sanctions or

the vividness of the impact of [the defendant's] conduct had faded.' " *Mihalis* at ¶ 33, quoting *State v. Farnese*, 4th Dist. Washington No. 15CA11, 2015–Ohio–3533, ¶ 15, 16.

{¶ 32} In this case, we cannot conclude that counsel's conduct was deficient. Further, we cannot say that such a motion would have been granted. The record reveals that although West was indigent at the time of trial, he was only 55 years old and in apparent good health. There is nothing in the record to indicate that he is incapable of working, or paying costs in the future. Therefore, it is, at best, speculative, to find that the trial court would have granted a waiver. Thus, we find no showing of prejudice.

{¶ 33} The first assignment of error is overruled.

### III. Motion to Suppress

{¶ 34} West's second assignment of error states:

APPELLANT'S FOURTH AMENDMENT RIGHT TO BE FREE FROM UNREASONABLE SEARCH AND SEIZURE WAS DENIED WHEN THE NECESSARY CONSENT WAS NOT PROVIDED FOR A WARRANTLESS SEARCH.

{¶ 35} West contends that the search that revealed the guns was invalid. In support, he notes that police did not have a warrant. He further claims that his daughter did not have the authority to consent to the search because she was merely a tenant of the house which belonged to her grandfather. He further contends that counsel was ineffective for failing to raise this issue.

{¶ 36} We begin by noting that counsel clearly raised, explored, and argued the issue of whether Jasmin had the authority to consent to a search of the premises. Thus,

we conclude that the claim of ineffective assistance of counsel lacks merit.

**{¶ 37}** Next, we turn to the validity of the consent. Unless a recognized exception applies, the Fourth Amendment of the United States Constitution mandates that police obtain a warrant based on probable cause in order to effectuate a lawful search. *State v. Holloway*, 2d Dist. Clark No. 04CA0070, 2006-Ohio-4797, ¶ 15–16, citing *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Valid consent to search is a recognized exception to the warrant requirement. *State v. Moon*, 2d Dist. Montgomery No. 9288, 1986 WL 2368, *1 (Feb. 14, 1986), citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). "A police officer may validly enter and search a home, without a warrant, when the officer has obtained the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a non-present co-occupant." *State v. Keggan*, 2d Dist. Greene No. 2006 CA 9, 2006-Ohio-6663, ¶ 45. (Citations omitted.)

**{¶ 38}** Proper consent can be given by a third party, but the third-party must possess "common authority over the area sought to be searched." *State v. Miller*, 117 Ohio App.3d 750, 759, 691 N.E.2d 703 (11th Dist.1997), citing *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). (Other citation omitted.) "Common authority rests 'on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.' " *State v. Pugh*, 2d Dist. Montgomery No. 25223, 2013-Ohio-1238, ¶ 9, citing *Matlock* at 171, 94 S.Ct. 988, 39 L.Ed.2d 242, fn. 7. "[T]he United States Supreme Court

has applied a 'reasonable belief' standard for determining whether a police officer's reliance upon the consent of a third party was proper under particular circumstances." *Miller* at 759, 691 N.E.2d 703. "That is, before a trial court can conclude that a warrantless search was valid on the basis of a third-party consent, it must find that the facts of the case supported a reasonable belief on the part of the police officer that the third party had the authority to consent to the search." *Id.*

{¶ 39} The trial court found that a valid consent to search was given by Jasmin, the victim, in this case. The court further found that the area searched was a common area shared by the occupants of the residence. We agree.

{¶ 40} At the hearing on the motion to suppress, Detective Metz testified that Jasmin told him that she owned the house. Detective Davis testified that Jasmin told him that she was the resident of the home. Detective Bradley testified that Jasmin confirmed that the property was her address. All three detectives testified that Jasmin gave them permsssion to search the yard. In fact, Jasmin asked them to search because she wanted them to find the guns.

{¶ 41} "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *State v. Koon*, 2d Dist. Montgomery No. 26296, 2015-Ohio-1326, ¶ 13, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion

of the trial court, whether the facts satisfy the applicable legal standard." *Id.* The application of the law to the trial court's findings of fact is subject to a de novo standard of review. *State v. Gordon*, 5th Dist. Fairfield No. 14–CA–13, 2014-Ohio-5027, ¶ 14, citing *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

{¶ 42} Even assuming, as argued by West, Jasmin did not have actual authority to consent, the court did not err in finding that she possessed the apparent authority to do so. As stated, a warrantless entry is valid if the police reasonably believe, although incorrectly, that the person giving consent possessed common authority over the premises.

{¶ 43} The second assignment of error is overruled.

### IV. Self-Representation

{¶ 44} The third assignment of error asserted by West is as follows:

THE APPELLANT WAS DENIED OF HIS RIGHT TO DUE PROCESS AND

FAIR TRIAL WHEN THE COURT DENIED HIM OF HIS CONSTITUTIONAL

RIGHT OF SELF-REPRESENTATION.

{¶ 45} West argues the trial court denied him his Sixth Amendment right to represent himself.

{¶ 46} The Sixth Amendment of the United States Constitution guarantees a criminal defendant a right to self-representation. *State v. Gibson*, 45 Ohio St.2d 366, 345 N.E.2d 399 (1976), paragraph one of the syllabus, citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). However, "[t]he dangers involved in waiving the right to representation by counsel are significant, and because the right to

self-representation can be employed as a tactic to delay trial and to disrupt otherwise orderly legal proceedings, the request for self-representation must be clearly and unequivocally asserted in a timely manner or it will be waived." *State v. Ware*, 8th Dist. Cuyahoga No. 99374, 2014-Ohio-815, ¶ 9, citing *State v. Cassano*, 96 Ohio St.3d 94, 2002–Ohio–3751, 772 N.E.2d 81. Once a defendant has clearly and unequivocally informed the trial court that he wishes to represent himself, the trial court possesses a clear legal duty to determine whether the defendant's waiver of counsel is knowing, intelligent, and voluntary. *State v. Williams*, 8th Dist. Cuyahoga No. 99859, 2014–Ohio–1057.

**{¶ 47}** This court, in *State v. Gatewood*, 2d Dist. Clark No. 2008 CA 64, 2009-Ohio-5610, stated:

When a criminal defendant is charged with a serious offense and "elects to proceed pro se, the trial court must demonstrate substantial compliance with Crim.R. 44(A) by making a sufficient inquiry to determine whether the defendant fully understood and intelligently relinquished his or her right to counsel." *State v. Martin*, 103 Ohio St.3d 385, 816 N.E.2d 227, 2004-Ohio-5471, citing *Gibson*, 45 Ohio St.2d 366, 345 N.E.2d 399; *State v. Pillow*, Greene App. No. 2007 CA 102, 2008-Ohio-5902, at ¶ 15. "To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's

responsibility. To be valid, such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea in tendered." *Von Moltke v. Gillies* (1948), 332 U.S. 708, 723-724, 68 S.Ct. 316, 92 L.Ed.2d 309. See, also, *Martin*, 103 Ohio St.3d 385, 816 N.E.2d 227, ¶ 40; *State v. Engle*, Montgomery App. No. 22455, 200[9]-Ohio-1944.

We conduct an independent review to determine whether a defendant voluntarily, knowingly, and intelligently waived his right to counsel based on the totality of the circumstances. *Wellston v. Horsley*, Jackson App. No. 05CA18, 2006-Ohio-4836, at ¶ 10, citing *Martin*, 103 Ohio St.3d 385, 816 N.E.2d 227, and *Gibson*, 45 Ohio St.[2d] 366. "Courts are to indulge every reasonable presumption against the waiver of a fundamental constitutional right including the right to be represented by counsel." *State v. Dyer* (1996), 117 Ohio App.3d 92, 95, 689 N.E.2d 1034.

We appreciate that waiver of counsel is a stormy sea for a trial court to navigate. There is even a foundational question as to whether a defendant is waiving a right (assistance of counsel) or asserting a right (self-

representation). Further, the self-representation right has itself been limited by the allowance of appointment of standby counsel over the self-represented defendant's objection, *McKaskle v. Wiggins* (1984), 465 U.S. 168, 178-179, 104 S.Ct. 944, 79 L.Ed.2d 122, and the mandatory representation by counsel at trial on the ground the defendant is competent to stand trial, but lacks the mental capacity to conduct his trial unless represented. *Indiana v. Edwards* (2008), [554] U.S. [164], 128 S.Ct. 2379, 171 L.Ed.2d 345. And if the judge makes the wrong call, either the complete denial of counsel, *Johnson v. United States* (1997), 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718, citing *Gideon* [*v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)], supra, or the denial of self-representation constitutes structural error which requires automatic reversal. *McKaskle*, supra; *State v. Reed* (1996), 74 Ohio St.3d 534, 660 N.E.2d 456.

*Id.* at ¶ 32-34.

**{¶ 48}** It is clear from the record that the trial court was patient with, and respectful of, West. The court listened to his arguments every time he came before the court. The court attempted to explain the process at every appearance. The court permitted West to make every argument he wanted to raise. The court also diligently attempted to ascertain whether West truly wanted to represent himself or whether he wanted to proceed with counsel. West was never clear and unequivocal about his desire to proceed on his own behalf.

**{¶ 49}** Even assuming that West made an unequivocal request at the beginning of the proceedings, we conclude that it was reasonable for the trial court to find that he

waived the request since he stated, several times, that he wanted an attorney, and he permitted counsel to act on his behalf in pleadings and at the motion to suppress.

**{¶ 50}** Finally, the trial court went to great lengths to ascertain West's wishes regarding counsel. West's conduct demonstrates, at best, an attempt to impede this process by his continual refusal to permit the trial court to conduct any type of meaningful colloquy. Thus, under the facts of this case, we conclude that the trial court did not err in denying West's request to represent himself.

**{¶ 51}** The third assignment of error is overruled.

## V. Conclusion

**{¶ 52}** All of West's assignments of error being overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . .

FROELICH, J. and WELBAUM, J., concur.

Copies mailed to:

Nathaniel R. Luken
Aleksandr F. Kochanowski
Hon. Stephen Wolaver