[Cite as *State v. Purifoy*, 2019-Ohio-2942.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28042 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-2113 |
| | : | |
| STEPHEN S. PURIFOY | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 19th day of July, 2019.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

WILLIAM O. CASS, JR., Atty. Reg. No. 0034517, 135 West Dorothy Lane, Suite 117, Dayton, Ohio 45429
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1} Stephen S. Purifoy pled guilty in the Montgomery County Court of Common Pleas to one count of attempted rape, a second-degree felony, and one count of attempted felonious assault, a third-degree felony. As part of the plea agreement, the State acknowledged that Purifoy would be eligible for community control sanctions in lieu of prison. After a presentence investigation, the trial court sentenced Purifoy to four years in prison for the attempted rape and 36 months for the attempted felonious assault, with the sentences to run concurrently. He was also designated a Tier III sex offender and ordered to pay court costs of $441.08.

{¶ 2} Purifoy appeals from his conviction, raising two assignments of error: 1) whether the trial court erred by sentencing Purifoy to prison and not community control, and 2) whether Purifoy's counsel was ineffective for failure to file an affidavit of indigency and to request a waiver of court costs at sentencing. For the reasons below, the trial court's judgment will be affirmed.

## I. Procedural History

{¶ 3} On or about July 6, 2017, Purifoy attempted to sexually assault a sleeping female caregiver at the group home for the developmentally disabled where he resided. When she resisted, he proceeded to punch and choke her. The victim convinced Purifoy that she had managed to call 911 and that the police had arrived, distracting Purifoy enough to escape in her car. The police found her in her car near the group home with marks and blood on her arms and face and abrasions on her knees. The police went to the group home, where Purifoy was waiting on the driveway, and officers arrested him without incident.

{¶ 4} On July 17, 2017, Purifoy was indicted on one count of attempted rape in

violation of R.C. 2907.02(A)(2) and 2923.02(A), and one count of attempt to commit felonious assault in violation of R.C. 2903.11(A)(1) and 2923.02(A).

{¶ 5} Purifoy requested a competency evaluation on August 11, 2017. The first evaluation found him to be competent to stand trial. Upon defense counsel's request, a second, separate evaluation was ordered, and Purifoy was found not competent to stand trial. The court ordered a third evaluation, which found Purifoy was competent. The parties stipulated to the qualifications of the experts and to the contents of their reports. The trial court found Purifoy competent to stand trial.

{¶ 6} On February 26, 2018, Purifoy entered a guilty plea to both counts. As part of his plea agreement, the State acknowledged that Purifoy would be eligible for community control sanctions in lieu of a prison sentence. During the plea hearing, the trial court explained to Purifoy that discretion to give community control sanctions or a prison sentence remained with the court. Purifoy stated he understood that he may not receive community control sanctions, and that it was possible for him to instead receive a prison sentence.

{¶ 7} During the plea hearing, when asked if he had any questions regarding the two plea forms, Purifoy answered in the negative. When asked if he had any mental conditions that make it hard for him to understand what was being said or what was happening in the court, Purifoy stated, "I got MRDD problems," which was confirmed by the Montgomery County Board of Developmental Disabilities (MCBDD) in the presentence investigation. When asked if there were any reason that he could not understand his rights as explained to him, Purifoy answered in the negative.

{¶ 8} On June 20, 2018, after a presentence investigation, Purifoy was sentenced

to four years in prison for attempted rape, concurrent to 36 months for attempted felonious assault. The trial court designated him a Tier III sex offender and ordered him to pay court costs. Counsel did not file an affidavit of indigency or request a waiver of the court costs at the sentencing hearing.

{¶ 9} Purifoy raises two assignments of error on appeal.

## II. Prison Sentence

{¶ 10} Purifoy's first assignment of error claims that "the trial court erred when it sentenced him to prison and did not give him community control." He asserts that his prison sentence was clearly and convincingly unsupported by the evidence. Purifoy contends that the court failed to consider the purposes and principles of sentencing, and that he should have been sentenced to community control due to his mental and developmental disabilities.

{¶ 11} "In reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2), rather than an abuse of discretion standard." *State v. Huffman*, 2d Dist. Miami No. 2016-CA-16, 2017-Ohio-4097, ¶ 6, citing *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9. "Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law." *Id.* " 'Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of fact[ ] a firm belief or conviction as to the facts

sought to be established.' " *Marcum* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 12} "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King*, 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.). However, in exercising its discretion, a trial court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Leopard*, 194 Ohio App.3d 500, 2011-Ohio-3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38.

{¶ 13} R.C. 2929.11 requires trial courts to be guided by the overriding principles of felony sentencing. Those purposes are "to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). The court must "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id.*

{¶ 14} R.C. 2929.11(B) provides that "[a] sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing, * * * commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with the sentences imposed for similar crimes committed by similar offenders."

{¶ 15} R.C. 2929.12(B) sets forth nine factors indicating that an offender's conduct is more serious than conduct normally constituting the offense, including the victim of the offense suffering serious physical, psychological, or economic harm as a result of the offense. R.C. 2929.12(C) sets forth four factors indicating that an offender's conduct is less serious than conduct normally constituting the offense, including any substantial grounds to mitigate the offender's conduct but not enough to constitute a defense. R.C. 2929.12(D) lists five factors that trial courts are to consider regarding the offender's likelihood for recidivism, including previous adjudication as a delinquent child, a history of criminal convictions, or a failure to be subsequently rehabilitated to a satisfactory degree. R.C. 2929.12(E) lists five factors that trial courts are to consider regarding the offender's likelihood to no longer commit future crimes, including a showing of genuine remorse for the offense.

{¶ 16} Furthermore, R.C. 2929.13(D)(1) provides that a trial court's prison sentence is presumed "necessary in order to comply with the purposes and principles of sentencing" for a felony of the first or second degree. However, "the sentencing court may impose a community control sanction or a combination of community control sanctions instead of a prison term" if (1) it "would adequately punish the offender and protect the public from future crime," and (2) it "would not demean the seriousness of the offense." R.C. 2929.13(D)(2).

{¶ 17} In this case, the trial court at sentencing emphasized that, although this case represented Purifoy's first felony convictions as an adult, Purifoy's conduct was "a most serious instance where [he] attempted to rape a caregiver in a group home." When asked in the presentence investigation why he attempted to rape the victim, Purifoy had

said he was mad for not being allowed to leave the group home to visit his family, and so he took his anger out on the victim. The victim impact statement expressed that the caregiver experienced physical, economic, and emotional distress following the incident.

{¶ 18} According to the presentence investigation, Purifoy, age 29, had a history of juvenile offenses, including one count of gross sexual imposition. He was also arrested for rape and sexual imposition, but the charges were later dismissed. Purifoy completed the tenth grade but did not continue high school due to an expulsion for behavior, and he had no additional education or certification. The MCBDD confirmed Purifoy had been diagnosed with "mild mental retardation, attention deficit hyperactivity disorder, and bipolar disorder." He previously worked for "Montco" for approximately seven months and indicated he would like to continue if placed on community control. A psychological evaluation more than one year prior to these offenses found Purifoy to have a moderate risk to reoffend. It stated that he had personal boundary and anger management issues and would make inappropriate comments about young girls. As a result, Purifoy was kept within auditory range of supervisors at the group home and at his employment site. He required line-of-sight monitoring while in public.

{¶ 19} The trial court had the opportunity to evaluate community control and treatment options, and had reviewed report letters in the presentence investigation from Purifoy's previous group home and the MCBDD, which both stated that Purifoy would not be appropriate for their programs due to his criminal history and risk to the community. The Alvis House treatment program also found Purifoy to be ineligible for admission. The MCBDD further stated that a secured or locked group home was the most appropriate type of setting to house Purifoy and keep the community safe, and it recommended that

he serve prison time. The victim's impact statement also expressed concern: "I hope he does not get released for a long time. He will do this to someone else."

{¶ 20} When the court asked if he had anything to say on his own behalf, Purifoy said, "I want to say I got family out there and stuff and – and I want to apologize to my victim for what I did." The State's sentencing memorandum argued that Purifoy's conduct and juvenile record outweighed mitigation from his developmental disabilities and his need for treatment, and it requested an eight-year prison term. The court noted at sentencing that it would have to balance Purifoy's threat to other caregivers and the community and the limitations that he faces because of his developmental disabilities.

{¶ 21} The trial court did not specifically state at sentencing that it had considered the purposes and principles of sentencing under the Ohio Revised Code; however, the record reflects that it did so.  In addition, the court stated in its judgment entry that it considered "the factors under Sections 2929.11, 2929.12 and 2929.13, as well as all other relevant provisions, of the Ohio Revised Code."

{¶ 22} Based on the record, we cannot conclude that the prison sentence was clearly and convincingly unsupported by the record. The trial court was able to make a determination of the seriousness of Purifoy's conduct and the risks of recidivism based on his juvenile criminal history and reports it received. In his appellate brief, Purifoy argues that there were less restrictive environments available instead of prison. However, each placement option that was contacted ultimately found Purifoy to be incompatible with their programs, and the MCBDD specifically recommended a restrictive environment like prison.

{¶ 23} Trial counsel for Purifoy stated at sentencing, and the court agreed, that this

case highlights the current lack of resources available to help individuals like Purifoy to become productive members of the community. However, there were ample facts in the record to allow the trial court to impose a discretionary sentence of prison time, and it was not clear and convincingly unsupported by the record

{¶ 24} Purifoy's first assignment of error is overruled.

### III. Ineffective Assistance of Trial Counsel

{¶ 25} In his second assignment of error, Purifoy claims he had ineffective assistance of counsel for failure to timely file the required affidavit to waive court costs.

{¶ 26} In order to establish ineffective assistance of counsel, a defendant must show that his trial counsel's performance was both deficient and prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989). Regarding deficiency, a defendant must show that his counsel's performance "fell below an objective standard of reasonableness." *Strickland* at 688. Regarding prejudice, it must be shown that there is a reasonable probability that but for counsel's unprofessional errors, the outcome of the proceeding would have been different. *Id.* at 694.

{¶ 27} Under R.C. 2947.23, a trial court is required to impose court costs against all convicted defendants, even those who are indigent. *See State v. White*, 103 Ohio St.3d 580, 2004-Ohio-5989, 817 N.E.2d 393, ¶ 8. The trial court, however, has the discretion to waive court costs if the defendant makes a motion to waive costs. *State v. Sibrian*, 2d Dist. Montgomery No. 27964, 2019-Ohio-1262, ¶ 11. Also, "[i]f at any time the court finds that an amount owing to the court is due and uncollectible, in whole or in part, the court may direct the clerk of the court to cancel all or part of the claim." R.C. 2303.23.

**{¶ 28}** "The failure to file an affidavit of indigency prior to sentencing may constitute ineffective assistance of counsel if the record shows a reasonable probability that the trial court would have found Defendant indigent and relieved him of the obligation to pay the fine had the affidavit been filed." *State v. Sheffield*, 2d Dist. Montgomery No. 20029, 2004-Ohio-3099, ¶ 5. However,

> [u]nder R.C. 2947.23(C), as amended by Am.Sub.H.B. 247, effective March 22, 2013, the trial court "retains jurisdiction to waive, suspend, or modify the payment of the costs of prosecution * * *, at the time of sentencing or at any time thereafter." Thus, there is no limit on when a defendant can move for a waiver of costs. This makes it almost impossible to find that counsel was ineffective for failing to raise the issue at sentencing. " 'The statutory provision in R.C. 2947.23(C) adds another facet to our ineffective assistance of counsel analysis because a defendant is no longer required to move for a waiver of court costs at the sentencing hearing or waive it — strategic timing may now play a role in trial counsel's decision — and prejudice resulting from a failure to move at the sentencing hearing is harder, if not impossible, to discern. Trial counsel may have decided as a matter of strategy not to seek a waiver or modification of court costs until some later time when the trial court had time to either reflect upon its sanctions or the vividness of the impact of [the defendant's] conduct had faded.' " [*State v. Mihalis*, 8th Dist. Cuyahoga No. 104308, 2016-Ohio-8056,] ¶ 33, quoting *State v. Farnese*, 4th Dist. Washington No. 15CA11, 2015-Ohio-3533, ¶ 15, 16.

*State v. West*, 2d Dist. Greene No. 2015-CA-72, 2017-Ohio-7521, ¶ 31.

**{¶ 29}** Purifoy argues that he lacks any prospective ability to pay court costs due to his criminal history and his mental disability status. Purifoy was appointed counsel, indicating a lack of funds. While these facts may indicate Purifoy's indigence and the trial court's possible approval to waive court costs, on this record we cannot conclude that Purifoy was prejudiced by trial counsel's failure to seek the waiver at sentencing when it can be made at any point thereafter.

**{¶ 30}** Purifoy's second assignment of error is overruled.

### IV. Conclusion

**{¶ 31}** The trial court's judgment will be affirmed.

. . . . . . . . . . .

HALL, J. and TUCKER, J., concur.

Copies sent to:

Mathias H. Heck
Andrew T. French
William O. Cass, Jr.
Hon. Michael W. Krumholtz